No. 687. GINZBURG ET AL. *v.* GOLDWATER. C. A. 2d Cir. Certiorari denied. THE CHIEF JUSTICE took no part in the consideration or decision of this petition. *Harold E. Kohn* and *David H. Marion* for petitioners. *John J. Wilson* for respondent. 

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS joins, dissenting.

Shortly before the 1964 presidential election, Fact magazine published an issue entitled "The Unconscious of a Conservative: A Special Issue on the Mind of Barry Goldwater." The thrust of the two main articles in this issue of Fact was that Senator Barry Goldwater, the 1964 Republican nominee for the Presidency, had a severely paranoid personality and was psychologically unfit for the high office to which he aspired. The articles in the magazine attempted to support the thesis that Senator Goldwater was mentally ill by citing allegedly factual incidents from his public and private life and by reporting the results of a "poll" of 12,356 psychiatrists, together with a "sampling" of the comments made by the 2,417 psychiatrists who responded to the poll questionnaire that the magazine mailed out. Shortly after the publication of the "special Goldwater issue," Senator Goldwater commenced this libel action for damages against Fact Magazine, Inc., Warren Boroson, the named author of one of the articles, and Ralph Ginzburg, the editor and publisher of Fact. The suit was brought in the United States District Court for the Southern District of New York on the basis of diversity of citizenship. After 15 days of trial, the jury returned a verdict against each of the defendants. Although the jury awarded Goldwater only $1 in compensatory damages against all three defendants, it went on to

award him punitive damages of $25,000 against Ginzburg and $50,000 against Fact Magazine, Inc. In their appeal to the United States Court of Appeals for the Second Circuit, Ginzburg and the other defendants attacked this award of damages, arguing that it severely penalized them for exercising their First Amendment rights to free speech and a free press. The Court of Appeals found, however, that the defendants had been accorded at trial all the First Amendment protection to which they were entitled under this Court's holdings in *New York Times Co.* v. *Sullivan,* 376 U. S. 254 (1964), and its progeny. *New York Times* and the cases following it permit public figures and officials to recover damages for libelous statements made about them if the publication was made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.* v. *Sullivan, supra,* at 280. See, *e. g., Rosenblatt* v. *Baer,* 383 U. S. 75 (1966). The Court of Appeals found that the District Court had properly applied the *New York Times* "actual malice" rule and affirmed Goldwater's libel award. Defendants Ginzburg and Fact Magazine, Inc., then petitioned this Court for a writ of certiorari to review the judgment of the Court of Appeals. It is this petition which this Court today denies.

I cannot subscribe to the result the Court reaches today because I firmly believe that the First Amendment guarantees to each person in this country the unconditional right to print what he pleases about public affairs. See *Curtis Publishing Co.* v. *Butts,* 388 U. S. 130, 170 (concurring in result and dissenting); and *New York Times Co.* v. *Sullivan, supra,* at 293 (concurring). This case perhaps more than any I have seen in this area convinces me that the *New York Times* constitutional rule is wholly inadequate to assure the "uninhibited,

robust, and wide-open" public debate which the majority in that case thought it was guaranteeing. See *New York Times Co.* v. *Sullivan, supra,* at 270. What I wrote in my separate opinion in *Rosenblatt* v. *Baer, supra,* at 95, seems to me equally applicable here:

> "This case illustrates I think what a short and inadequate step this Court took in the *New York Times* case to guard free press and free speech against the grave dangers to the press and the public created by libel actions. Half-million-dollar judgments for libel damages like those awarded against the New York Times will not be stopped by requirements that 'malice' be found, however that term is defined. Such a requirement is little protection against high emotions and deep prejudices which frequently pervade local communities where libel suits are tried. And this Court cannot and should not limit its protection against such press-destroying judgments by reviewing the evidence, findings, and court rulings only on a case-by-case basis. The only sure way to protect speech and press against these threats is to recognize that libel laws are abridgments of speech and press and therefore are barred in both federal and state courts by the First and Fourteenth Amendments. I repeat what I said in the *New York Times* case that 'An unconditional right to say what one pleases about public affairs is what I consider to be the minimum guarantee of the First Amendment.'"

Moreover, there are two special factors in this case that make the holding of the Court of Appeals all the more repressive and ominous. This suit was brought by a man who was then the nominee of his party for the Presidency of the United States. In our times, the person who holds that high office has an almost unbounded power for good or evil. The public has an

unqualified right to have the character and fitness of anyone who aspires to the Presidency held up for the closest scrutiny. Extravagant, reckless statements and even claims that may not be true seem to me an inevitable and perhaps essential part of the process by which the voting public informs itself of the qualities of a man who would be President. The decisions of the District Court and the Court of Appeals in this case can only have the effect of dampening political debate by making fearful and timid those who should under our Constitution feel totally free openly to criticize Presidential candidates. Doubtless, the jury was justified in this case in finding that the Fact articles on Senator Goldwater were prepared with a reckless disregard of the truth, as many campaign articles unquestionably are. But, even if I believed in a balancing process to determine the scope of the First Amendment, which I do not, the grave dangers of prohibiting or penalizing the publication of even the most inaccurate and misleading information seem to me to more than outweigh any gain, personal or social, that might result from permitting libel awards such as the one before the Court today. I firmly believe it is precisely because of these considerations that the First Amendment bars in absolute, unequivocal terms any abridgment by the Government of freedom of speech and press.

Another reason for the particular offensiveness of this case is that the damages awarded Senator Goldwater were, except for $1, wholly punitive. Senator Goldwater neither pleaded nor proved any special damages, and the jury's verdict of $1 nominal compensatory damages establishes that he suffered little if any actual harm. In spite of this, Ginzburg and his magazine are being punished to the extent of being forced to pay Senator Goldwater $75,000 in punitive damages. It is bad enough when the First Amendment is violated to

compensate a person who has actually suffered a provable injury as a result of libelous statements; it is incomprehensible that a person who has suffered no provable harm can recover libel damages imposed solely to punish defendants who have exercised their First Amendment rights.

I would grant certiorari and reverse the Court of Appeals summarily.