**AUTOBUSES INTERNACIONALES S DE R.L., LTD., et al., Appellants,**

**v.**

**EL CONTINENTAL PUBLISHING COMPANY et al., Appellees.**

**No. 6233.**

Court of Civil Appeals of Texas, El Paso.

June 21, 1972.

Rehearing Denied Aug. 2, 1972.

Fred J. Morton, Holvey Williams, Joseph L. Dunigan, El Paso, for appellants.

Mayfield, Broaddus & Perrenot, Francis C. Broaddus, Jr., Richard B. Perrenot, El Paso, for appellees.

## OPINION

WARD, Justice.

This is an appeal by the plaintiffs below from the granting of a summary judgment in favor of the defendants. We reverse and remand the case for trial.

The plaintiffs are a Mexican bus company and Dr. Manuel Garciagodoy, who is the owner and manager of the company. The defendants are three Mexican language newspapers, which are circulated in El Paso, together with Apolinar Ochoa and Ricardo Ahumada, who are employed in various capacities by two of the newspaper companies. The bus company is a common carrier and is engaged in the international bus business of transporting passengers for hire between Juarez, Chihuahua, Mexico, and El Paso, Texas. The fares charged by the bus company for its routes in the United States are set by the Interstate Commerce Commission, and the fares are established by a similar agency of the Mexican Government as to all routes in Mexico.

The plaintiffs alleged in their final petition that on or about October 12, 1967, the two individual defendants, Ochoa and Ahumada, as representatives for the newspapers, contacted the plaintiff, Dr. Manuel Garciagodoy, in El Paso, and demanded that he and his bus company pay to the defendants the sum of $100,000.00 or that they would initiate a newspaper campaign against the plaintiffs that would ruin them financially and would run the bus company out of business. The plaintiffs refused to comply with the alleged threat. It was alleged that the newspapers immediately printed a series of false, defamatory and libelous articles which were circulated by the defendants in El Paso mainly to the effect that the bus company had raised its fares without notice and contrary to law; that the company was notorious for having raised its fares in the past without permission until the transit authorities had had to intervene; that labor organizations in

Mexico were preparing a boycott of the company; and that various officials had declared the raises in fares a mockery of Mexican law. Other articles in the series were to the effect that the company had doubled its fares without authority and it was alleged that they were calculated to manufacture and incite an effective boycott of the bus line by the traveling public. One publication was to the effect that though the Mexican authorities had been notified of the illegal raises that no one cared and implied that the plaintiffs were so influential with the authorities as to have corrupted them to fail to do that which their official duties required them to do. A total of some ten articles were published over a period of nine months by the defendants and these are not disputed. The plaintiffs alleged that the defendant Ochoa was offered an opportunity to ride the busses and observe the fact that correct rates were being charged; that the plaintiff Garciagodoy had written the defendant newspapers and explained the truth of the operations and had submitted explanations and rebuttals for them to publish, all of which had been refused. The plaintiffs alleged that these were immaterial to the defendants who had conspired to put the plaintiffs out of business and they were acting with knowledge of the falsity or with reckless disregard of whether the publications were true or not. Additional allegations were to the effect that as a result of the false statements a partial boycott of the bus line was effectuated; that a substantial loss of income was suffered; and that various other actual, special and exemplary damages were sustained. The defendants denied any conspiracy or extortion attempt though they admitted the publication of the ten newspaper articles. However, with respect to the articles, the defendants denied that they were false or libelous. They further answered that the publications were fair, true and impartial accounts of official proceedings and were reasonable and fair comments on matters of public concern published for general information and were privileged as provided for in Sections 1 and 4 of Art. 5432, Vernon's Ann.Civ.St. The defendants affirmatively denied the existence of actual malice in the publications and asserted their constitutional defenses as established by the recent United States Supreme Court decisions.

After numerous depositions, interrogatories and other discovery procedures had been completed, the defendants filed various motions for summary judgment. They first filed a motion for summary judgment in part on the issue of the alleged conspiracy to extort money from the plaintiffs which was first denied by the trial Court. Thereafter, the defendants filed a motion for summary judgment in part on the issue of libel, specifically urging the absence of actual malice. Following a hearing on this motion, the trial Court entered a summary judgment for the defendants as to any cause of action for libel. Thereafter, the defendants filed a motion for summary judgment on the entire case, including therein a renewal of their previously denied motion for summary judgment in part on the alleged conspiracy to extort money. The trial Court then withdrew its previous order which had denied the defendants' motion for summary judgment on the extortion conspiracy and rendered final judgment for the defendants on the entire case.

By whatever name is involved, we are inclined to agree with the defendants in their statement that essentially the case for the plaintiffs is one of libel either with or without a conspiracy. We assume for our present purposes that the matter under discussion in the newspaper articles concern a public figure and a matter of public or general interest. It therefore follows that an indispensable element of the plaintiffs' case on final trial is actual malice and to recover the plaintiffs must prove not only that the publication was false but that it was made with knowledge of its falsity or with reckless disregard of whether it was false or not. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); New York Times

Company v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964); El Paso Times, Inc. v. Trexler, 447 S.W.2d 403 (Tex.1969). In assuming the summary judgment burden in the present case, the defendants rely on testimony of the reporters who took part in the preparation of the articles, testimony of the editors who reviewed the articles and that of various witnesses who were the sources of the articles. From the defendants' viewpoint, this testimony shows that the articles were written by experienced reporters from reliable sources, reviewed by experienced editors with belief that the articles were true and correct, that the people who furnished the statements to the reporters made them based on their own knowledge, and that the articles as printed accurately reported their statements to the reporters. Regardless of this, at this pretrial stage, we must accept as true all evidence which tends to support the position of the plaintiffs. From the plaintiffs' evidence we therefore assume that there was a preconceived plan of extortionists to secure the $100,000.00 by threat of blackmail, failing which a campaign was conducted to destroy the business by libelous articles. The plaintiffs offered testimony that all of the articles were false, that the errors of the articles were repeatedly pointed out to the defendants from the beginning when the defendant Ochoa refused Garciagodoy's offer to ride the bus and see for himself. At that time he is alleged to have stated that he didn't care. Without commenting further, we state that a review of the evidence offered by the plaintiffs establishes a more vicious attack made with the required recklessness or knowledge of falsity than that which passed constitutional scrutiny in Goldwater v. Ginzburg, 414 F.2d 324 (2nd Cir. 1969, cert. denied), 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695 (1970). Weaker evidence was sufficient to raise a material issue of fact as to the existence or non-existence of malice in the recent summary judgment case of Glenn v. Gidel et al., 477 S.W.2d 331 (Tex.Civ.App.—Amarillo (1972, no writ).

Under this view, the extortion attempt or conspiracy to extort is considered as part of the cause of action for libel. It is certainly admissible, together with any evidence that may be present of negligence, ill will, bias, spite or prejudice for the purpose of establishing by cumulation, the fact of the defendants' recklessness or of their knowledge of falsity. Goldwater v. Ginzburg, supra. The separate attempt by means of summary judgment to eliminate this portion of the plaintiffs' cause of action from that concerning libel was also error.

The summary judgment rendered by the trial Court is reversed and the cause is remanded for trial on the merits.

## ON MOTION FOR REHEARING

In the motion for rehearing filed by the appellees, complaint is made that the Court of Civil Appeals erred in concluding as a fact that the fares charged by the bus company for its routes in the United States are set by the Interstate Commerce Commission because the Interstate Commerce Commission is totally without jurisdiction to regulate the bus company or control its rates. The Appellants in their brief asserted that new rates were charged passengers as they entered the United States, "which United States laws required by virtue of rates set by the Interstate Commerce Commission. In truth and in fact, the company complied at all times with the rates set by the I.C.C. in the United States —". Not only did the appellees permit this statement to go unchallenged, but they compounded the error by asserting in their own brief that "the Plaintiff bus company holds a Certificate from the Interstate Commerce Commission".

A purported copy of the Certificate of Public Convenience and Necessity granted by the Interstate Commerce Commission is then referred to by Appellees, and it is found in the transcript at the page designated.

The statements made by the appellants in their brief not having been challenged, they were and are accepted as correct by this Court. Rule 419 Texas Rules of Civil Procedure. The motion for rehearing is overruled.