# (May 6, 1981)

■ Ross J. DI LORENZO, Appellant, v NEW YORK NEWS, INC., et al., Respondents. — On this court's own motion our decision in the above-entitled case

dated February 3, 1981 is recalled and vacated and the following decision is substituted therefor: Motion by defendants for leave to appeal to the Court of Appeals from an order of this court dated October 20, 1980 [78 AD2d 669] which determined an appeal from an order of the Supreme Court, Kings County, entered April 30, 1979. Motion denied. On this court's own motion, decision in the above-entitled case is amended to read as follows: In an action to recover damages for libel, the plaintiff appeals from an order of the Supreme Court, Kings County, entered April 30, 1979 which granted the defendants' motion for summary judgment and dismissed the complaint. Order reversed, with $50 costs and disbursements, motion denied and complaint reinstated. This appeal concerns a defamation action brought by Ross Di Lorenzo, a former Civil Court Judge and an admitted public figure, against the New York News, Inc., and one of its reporters, John Toscano. Di Lorenzo seeks to recover damages for the publication of an article in the *New York Daily News* in which Toscano falsely reported, immediately prior to the Democratic primary for Brooklyn Borough President in which Di Lorenzo was a candidate, that Di Lorenzo had been convicted of perjury. After discovery was complete, the defendants moved for summary judgment and the motion was granted. The plaintiff appeals from that determination. At the summary judgment stage in a defamation action which has constitutional implications, a public figure plaintiff is required only to submit evidence "which shows a genuine issue of material fact from which a reasonable jury *could find* actual malice with convincing clarity" (*Nader v de Toledano,* 408 A2d 31, 49; see, also, *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Rinaldi v Holt Rinehart & Winston,* 42 NY2d 369; *James v Gannett Co.,* 40 NY2d 415). Concern for the First Amendment should not be transformed into a requirement that the plaintiff prove actual malice to the motion court (*Nader v de Toledano, supra,* p 49). In the instant case Special Term determined that Di Lorenzo had failed to establish material questions of fact which would be sufficient to warrant an ultimate finding of actual malice. We disagree. In August, 1973 Di Lorenzo was indicted for eight counts of perjury in the first degree and one count of obstructing governmental administration. Thereafter the obstruction charge was dismissed prior to trial; he was acquitted after two trials of six of the perjury counts; of the remaining perjury counts, one was dismissed on motion by the Special Prosecutor and the other was apparently abandoned. Toscano did not cover these events but was aware of them at the time they occurred. Several stories concerning the outcome were published in the *Daily News.* In April, 1977 Toscano, whose assignment had included local politics in Brooklyn and Queens for the past eight years, wrote an article concerning Di Lorenzo's entry into the primary race. His account of Di Lorenzo's criminal difficulties was consistent with the facts. "Di Lorenzo, 69, left the bench about two years ago after being indicted for perjury growing out of his testimony in a disciplinary proceeding before a judicial tribunal. He was eventually cleared on all counts." The story was written shortly after Toscano had had dinner with Di Lorenzo. Di Lorenzo claims that during that meeting the resolution of the indictment was discussed in detail. Toscano admits only that a passing reference to the outcome may have been made and that after this meeting, he "did not have a clear understanding of the various legal steps leading to dismissal of the charges." A little more than four months after the first story, in the week preceding the September, 1977 primary, Toscano wrote a "round-up" article for the Brooklyn section of the *Sunday Daily News* concerning the candidates and issues involved in the Brooklyn Borough President race. It contained the following

erroneous statement: "Di Lorenzo, a powerful Democratic Leader from Bay Ridge before he went on the bench, was convicted of perjury charges several years ago, which were subsequently dropped." The entire "Brooklyn section" was printed and distributed to newsstands at least one day before the edition's sale date, to be held for assembly with the other sections of the Sunday paper upon their later delivery. At some unspecified time and in some unspecified manner, the *Daily News* discovered the error and printed the following retraction on the editorial page of the main Sunday section: "BEG PARDON In today's Brooklyn Living section, printed late last week, it is erroneously reported that Ross Di Lorenzo, a former Civil Court judge, was convicted of perjury charges several years ago. In fact, he was acquitted of all charges last year. The News regrets this error." The collated *Sunday Daily News,* dated September 4, 1977, was sold to the Brooklyn public containing both the erroneous comment and the retraction. At his deposition Toscano admitted that at the time he wrote the defamatory statement he did not consult his own files or former article, he did not check the paper's morgue files, and he did not inquire of other reporters in the city room or anyone else. He repeatedly testified that he thought his recollection of the facts was correct and that he believed the erroneous comment to be true when he wrote it. However, when asked for his specific recollection of the facts in September, 1977, Toscano replied: "My honest recollection was that he had been indicted by Mr. Nadjari and that subsequently he was out from under the indictment. Whether it was thrown out or whether it was after trial, that wasn't clear in my mind." In his opposing affidavits Di Lorenzo implied that Toscano harbored bad feelings towards him. The basis for this hostility was Di Lorenzo's refusal to follow Toscano's recommendation that a particular person be given a public relations job in Di Lorenzo's campaign. Di Lorenzo asserted that the defamatory comment was written after Toscano learned of Di Lorenzo's decision. Resolution of this case requires clarification of the concepts of "actual malice". "Actual malice" is a term of art, created to express the standard of liability that must be established before recovery can be permitted in public figure or public official defamation cases *(Cantrell v Forest City Pub. Co.,* 419 US 245, 251). First articulated in *New York Times Co. v Sullivan* (376 US 254, 280) the "actual malice" standard was defined as defamatory publication "with knowledge that it was false or with reckless disregard of whether it was false or not." Further refinements of the concept followed in *Garrison v Louisiana* (379 US 64, 74) where recovery was conditioned on publication with a "high degree of awareness of * * * probable falsity". In *St. Amant v Thompson* (390 US 727, 731) "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" was required to demonstrate reckless disregard. Intentional disregard was the term used to explain "actual malice" in *Reliance Ins. Co. v Barron's* (442 F Supp 1341, 1350). The most recent formulation appears in *Herbert v Lando* (441 US 153, 160) where it was noted that "To be liable, the alleged defamer of public officials or of public figures must know or have reason to suspect that his publication is false." Needless to say, a standard of liability which encompasses innumerable subtleties of the defendant's mind set and conduct, is exceedingly difficult to apply to the varying circumstances of each case. However, the one constant underlying the decisions in this area is that those varying circumstances, taken as a whole, must provide reasons to question the truth of the publication *(James v Gannett Co.,* 40 NY2d 415, 424, *supra).* The defendants in the instant case note the heavy burden of the defamed plaintiff under the "actual malice" standard and contend that he

has presented no evidence which would defeat the assertions of good faith belief in the truth of the publication. We believe that, despite the protestations of good faith, a jury could reasonably find that there were reasons to doubt the truth of the comment, which should have alerted Toscano. Some of the most significant suggestions of possible falsity arise from the comment itself. Initially we note that accusations of criminal convictions are serious, indeed (see *Rinaldi v Holt Rinehart & Winston,* 42 NY2d 369, *supra).* Serious charges with potential for great harm require investigation *(Goldwater v Ginzburg,* 414 F2d 324, 329, cert den 396 US 1049). But it is not the implication of the comment alone, it is the appearance of the statement within the subject matter of the article which should have triggered further substantiation (cf. *St. Amant v Thompson, supra,* p 732). The primary focus of the article was providing voters with a summarization of the candidates, their qualifications and viewpoints. Di Lorenzo was presented as a serious candidate. A felony conviction tends to cause voter rejection. Awareness of this potential disapproval prevents most candidates with such a background from entering an election. Thus the reporter had cause to investigate the factual basis of the statement. There are other reasons upon which a jury could choose to reject the defendants' assertions of good faith belief in the truth of the statement. It is clear that the reporter had prior knowledge of the proceedings which led to Di Lorenzo's acquittal, both from the reports at the time of their occurrence and from the discussion during the dinner he had with Di Lorenzo. That knowledge is reflected in the accurate summarization contained in the first article. The defendants contend, however, that there is no evidence to show that Toscano recalled that knowledge four months later when he wrote the article in question. While there is not direct evidence showing accurate recall, there is sufficient circumstantial evidence, given the prior knowledge and the suggestions of untruth inherent in the statement itself, to permit a jury to find that the reporter was less than candid concerning his level of recall at the time of the defamatory article. Moreover, actual knowledge at the time of publication need not be demonstrated or inferred where the reporter's acknowledged recollection is insufficient to support the comment he wrote. Toscano knew that Di Lorenzo was indicted and that subsequently Di Lorenzo was "out from under" the indictment. He did not know Di Lorenzo was convicted. A jury could reasonably find that the reporter's insufficient recall alone should have motivated him to check before he wrote. The reporter's failure to check the facts becomes more significant when consideration is given to the ease with which those facts could have been checked. Toscano could have checked his previous article, or the newspaper's morgue files, or spoken to a fellow reporter who had testified at Di Lorenzo's trial and who worked in Toscano's office. Coupling the ease of investigation with the lack of time pressure generally associated with "hot news", a jury could find that the reporter's failure to check evidenced a "reckless disregard for the truth" (see *Widener v Pacific Gas & Elec. Co.,* 75 Cal App 3d 415; see, also, *Carson v Allied News Co.,* 529 F2d 206, 211; *Vandenburg v Newsweek, Inc.,* 507 F2d 1024, 1026; *Goldwater v Ginzburg,* 414 F2d 324, 339, cert den 396 US 1049, *supra).* Another circumstance which could support the inference of actual malice is the reporter's alleged hostility. The defendants assert, however, that any alleged *malice* is not a determinative factor since "actual malice" does not mean hostility. Clearly the concepts underlying malice and actual malice are not the same, but this does not preclude a relationship between them. Malice means ill will, spite, or hostility. "Actual malice" concerns the defendant's attitude toward the truth *(Cantrell v Forest City Pub. Co.,* 419

US 245, 252, *supra)*. "[M]otive and intent may be adduced for the purpose of establishing by accumulation and by appropriate inference the fact of defendant's recklessness" *(Cochran v Indianapolis Newspapers,* 372 NE 1211, 1220; see *Goldwater v Ginzburg, supra,* p 342; *Hotchner v Castillo-Puche,* 404 F Supp 1041, 1047). Thus the jury can permissibly consider malice among the other more obvious circumstances supporting the inference of actual malice. As noted in *Herbert v Lando* (441 US 153, 170, *supra),* the defendants in defamation litigation involving First Amendment considerations tend to assert their good faith belief in the truth of their statements at the time they were written. Nevertheless we caution that proof of malice alone may not be sufficient to justify a finding of "actual malice" (see *Letter Carriers v Austin,* 418 US 264, 281; *Greenbelt Pub. Assn. v Bresler,* 398 US 6, 10-11). Although defendant New York News, Inc., will be liable for publication with actual malice on the theory of *respondeat superior* if the reporter is found to have acted in reckless disregard *(Cantrell v Forest City Pub. Co.,* 419 US 245, 253, *supra; Karaduman v Newsday, Inc.,* 51 NY2d 531), it asserts, in its own right, that the simultaneous publication of the retraction with the defamatory comment evidences its concern for the truth, and that therefore summary judgment in its favor is warranted. A retraction in its traditional role is considered some evidence of lack of ill will and can be used to mitigate damages (see Prosser, Torts [4th ed], § 116; 1 Seelman, Law of Libel and Slander in State of New York, par 325). More recently prompt postlibel retractions have been given weight as factors demonstrating lack of malice where circumstances permit an inference of good will and accidental publication of the libel (cf. *Hoffman v Washington Post Co.,* 433 F Supp 600, affd 578 F2d 442; Sack, Libel, Slander, and Related Problems, ch V.5.2.4). However, a prompt retraction standing alone is not sufficient to show lack of actual malice as a matter of law *(Kerwick v Orange County Pub. Div. of Ottaway Newspapers,* 53 NY2d 625). In this case, however, we confront a simultaneous publication of the libel with its retraction. Defendant New York News, Inc., has admitted publishing the defamatory statement with an awareness of its falsity. Publishing a defamatory falsehood with knowledge that it is untrue constitutes actual malice. New York News, Inc., without providing the details of the discovery of the falsity or the decision to retract in this manner rather than reprint, has asserted that the retraction demonstrates a concern for the truth, given the exigencies and logistics of circulation. In view of the absence of facts on this record, we must refrain from resolving the issue, and note merely that the matter should be resolved at trial. In conclusion, we hold that plaintiff has submitted sufficient evidence of material factual issues which precludes the granting of summary judgment. Hopkins, J.P., Gibbons, Rabin and O'Connor, JJ., concur.