In re ESTATE OF Francis Eugene SHORTER, Helena W. Martin, Ada Went Shorter, Appellants-Cross Appellees.

Nos. 80–1212, 80–1213.

District of Columbia Court of Appeals.

Argued Oct. 29, 1981.

Decided April 12, 1982.

Marion Edwyn Harrison, Washington, D. C., with whom Patricia C. Anderson and John F. Sherlock III, Washington, D. C., were on the briefs for Helena W. Martin.

David B. Weaver, Washington, D. C., appointed by this court, for Ada Shorter.

Before KELLY, KERN and BELSON, Associate Judges.

KERN, Associate Judge:

This is an appeal from an order of the probate court granting letters of administration of the estate of Francis Eugene Shorter to Ada Went Shorter (hereinafter appellee). On cross-appeal, appellee challenges the court's finding that decedent was the father of the child for whom Helena W. Martin (hereinafter appellant) is guardian.

## I

Decedent died intestate of stab wounds inflicted by his spouse, Felicia Martin Shorter. Felicia Shorter was convicted in Virginia of voluntary manslaughter and is at present on parole from a sentence of imprisonment. Decedent was also survived by a putative son, Theron Eugene Shorter, a minor; his mother, the appellee, Ada Went Shorter; his father and a sister.

The appellant, Helena W. Martin, mother of Felicia Shorter, was appointed guardian of the minor, Theron Shorter, by the Probate Division of the Superior Court of the District of Columbia on August 13, 1979. On August 28, 1979, Mrs. Martin filed a Petition for Letters of Administration with the probate court. Contesting this petition, Mrs. Ada Shorter filed an opposition on September 12, stating that Theron Shorter is not decedent's son and therefore not the heir at law of his estate [1] and that letters should be granted to her rather than to Mrs. Martin.

The probate court conducted a hearing on the Petition for Letters of Administration on January 4, 1980.[2] Mrs. Martin appeared with counsel and Mrs. Shorter appeared *pro se*, although she had the aid of counsel at certain times prior to the hearing. Mrs. Martin presented her own testimony and that of her daughter in support of her assertion that Theron Shorter is the son of decedent. Mrs. Shorter testified to her belief that Theron is not decedent's son and proffered certain evidence which, according to Mrs. Shorter, she would produce if she could afford the assistance of counsel in the collection of evidence.

At the conclusion of the hearing the court found that Theron Shorter is the son of decedent, but reserved judgment on the proper administrator of the estate, pending the filing of additional legal briefs. On April 25, 1980, the court issued a Memorandum Settling Issue of Entitlement to Letters of Administration granting letters to Ada Shorter. On appeal, appellant Mrs. Martin attacks this order, and appellee Mrs. Shorter, on cross-appeal, contests the court's finding of paternity at the hearing.

## II

D.C.Code 1973, § 20–334, sets up an order of preference for the granting of letters of administration of the estate to a person dying intestate. Relations to the decedent are preferred in the following general order: the surviving spouse or child; the surviving spouse, if no child; a grandchild; the father or mother; brothers and sisters; the next of kin, etc.[3]

---

1. D.C.Code 1973, § 19–320 precludes one who has been convicted of felonious homicide from taking any estate or interest in property by way of inheritance or devise and provides that the estate is distributed as though the person convicted predeceased decedent. Thus, if Theron Shorter is decedent's only child, then he is the sole heir at law. *See* D.C.Code 1973, §§ 19–305, –306.

2. Neither decedent's father nor his sister appeared at the hearing or have in any way expressed on the record a desire to administer the estate.

3. D.C.Code, § 20–334(a) provides the following:

   The Probate Court may grant letters of administration of the estate of a person dying *intestate to one or more of the following* persons, according to the order of preference indicated:
   (1) where there is a surviving spouse and a child or children, to the surviving spouse or to the child, or one or more of the children qualified to act as administrator;
   (2) where there is a surviving spouse and no child, the surviving spouse shall be preferred, and, next to the surviving spouse, a grandchild shall be preferred;
   (3) where there is no surviving spouse, or child, or grandchild to act, the father or mother shall be preferred;
   (4) where there is no surviving spouse, or child, or grandchild, or father, or mother to act, brothers and sisters shall be preferred; and, when there is no brother or sister, the next of kin shall be preferred;
   (5) relations of the whole blood shall be preferred to those of the half-blood in equal degree; and relations of the half-blood shall be preferred to those of the whole blood in a remoter degree;
   (6) relations descending shall be preferred to relations ascending, in the collateral line; for example, a nephew shall be preferred to an uncle;

Felicia Shorter, the surviving spouse, is disqualified from serving as administratrix of the estate because of her conviction of the voluntary manslaughter of decedent. D.C.Code 1973, § 20-351(a)(1). The minority status of the surviving son likewise precludes his ability to serve as administrator. D.C.Code 1973, § 20-351(a)(4). The probate court, considering the statutory order of preference as set forth in § 20-334, found that appellee Ada Shorter, as mother of decedent, is the proper person to serve as administratrix in this case.

Appellant Mrs. Martin contends that § 20-334 does not establish a *mandatory* order of preference, but instead serves as a guideline and is subject to the court's discretion. She points to the legislative decision in 1965 to change the word "shall" to "may" in the opening directive of the statute, which now states, "The Probate Court *may* grant letters of administration . . . according to the order of preference indicated." (Emphasis supplied.)[4] In addition, she argues that case law reveals judicial exercise of this discretion in other probate cases.

In light of *Gage v. Riggs National Bank of Washington,* 119 U.S.App.D.C. 69, 337 F.2d 105 (1964), we agree that the probate court does have some discretion to deviate from the statutory guidelines. In *Gage,* the D.C. Circuit examined the prede-

cessor of § 20-334 and concluded that, upon a showing of good reason, the probate court may elect *not* to favor a higher priority claimant over a lower priority claimant and may favor an outsider over persons included in the order of preference.[5] The revision of the preference statute was an express recognition of those cases, like *Gage,* which vested the probate court with some discretion in selecting administrators. *E.g., Randall v. Bockhorst,* 98 U.S.App.D.C. 77, 232 F.2d 334 (1956); *Haviland v. Harriss,* 60 App.D.C. 255, 50 F.2d 1069 (1931).[6]

Appellant offers two reasons which she claims *required* the trial court to depart from the prescribed statutory order. First, appellant argues that appellee is, as a matter of law, an unsuitable person to serve as administratrix. Specifically, because the child of decedent is the sole heir of his estate and appellee Shorter has consistently maintained that this child is not in fact decedent's son, appellant asserts that appellee is hostile to the interests of the estate and hence cannot be granted letters of administration of the estate. Appellant Martin also cites as evidence of the unsuitability of appellee Shorter as administratrix the fact that she did not proceed in a timely fashion to probate her son's estate.

In light of the continuing supervision of the probate court as to every stage of an estate's administration, this argument

(7) a person may not be preferred in the ascending line beyond a father or mother, or in the descending line below a grandchild.

4. Prior to the 1965 amendment which added § 20-334 to the D.C.Code, the predecessor of that section, D.C.Code § 20-204, provided as follows:

. . . If the intestate leaves a widow or surviving husband and a child or children, administration, subject to the discretion of the court, *shall* be granted either to the widow or surviving husband or to the child or one or more of the children qualified to act as administrator. . . . [Emphasis supplied.]

5. In *Gage,* two preferred classes, paternal first cousins and a maternal first cousin, had been contending for appointment as administrator. The D.C. Circuit reviewed the probate court's appointment of a bank, as an outsider, with the express approval of the maternal first cousins and concluded that under the particular cir-

cumstances (*i.e.,* where one of the contesting preferred classes approved the appointment) the appointment was not an abuse of discretion.

6. The Report of the House Committee on the Judiciary, which deals with the revision of the preference statute and related provisions, states the following:

It is not the purpose to make substantive changes in the law. While in a few sections, changes have been made which might at first comparison be considered "substantive," actually it is intended to reflect in those changes only what apparently was the legislative intent, or is implied in the provisions themselves, *or has been stated by the courts in construing the sections.* [H.R.Rep.No.235, 89th Cong., 1st Sess. 1 (1965) (emphasis supplied).]

does not persuade us that the court should have declined as a matter of law to appoint appellee as administratrix of decedent's estate *solely* because of her insistence that the child is not the child of decedent. Statutes and case law do not require that those seeking appointment as administrators be disinterested in or have no claims against the estate as a condition of their appointment. *See Berryman v. Riggs National Bank,* 131 U.S.App.D.C. 42, 401 F.2d 993 (1968); *Brooks v. DeLacy,* 103 U.S.App.D.C. 223, 257 F.2d 227 (1958). We note that to qualify as administratrix, appellee Shorter will have to take an oath, file a bond, and submit to any directions or limitations which the probate court may impose. She must submit an accounting of her actions as administratrix, which is subject to the court's approval. Appropriate remedies are available if her performance as administratrix is ineffective or threatens to harm the estate.

■ Second, appellant Martin argues that she must as a matter of law be the preferred administrator because a child, otherwise incompetent to serve as administrator due to his minority, is qualified to serve through a legally appointed guardian. The law in this jurisdiction does not support this conclusion.[7] Furthermore, § 20–334(b) explicitly provides that the incompetency of an individual removes that person from consideration as an administrator. "Where a person described in subsection (a) of this section is incompetent to serve, administration shall be granted as if he or she were not living." D.C.Code 1973, § 20–334(b). Because the guardian does not acquire the ward's statutory preference, we cannot conclude that appellant here must be appointed administratrix.

■ Finding unconvincing the arguments that as a matter of law appellee was unsuitable and appellant had priority, we conclude that it was within the discretion of the court *either* to adhere to the statutory order of preference and appoint appellee Shorter *or* to determine upon the particular facts here that appellant Martin should be administratrix.

Having concluded that the Probate Division possesses discretion under section 20–334 in the instant case, we must examine the trial court's ruling contained in its Memorandum Settling Issue of Entitlement to Letters of Administration (R. 24–25) to determine if such statutory discretion was in fact exercised.

The court, after quoting the statute, stated:

> While the Court agrees that an element of discretion exists in the use of the word "may," the Court is not persuaded that such discretion goes to the point of leaping over all persons between one whose suitability is questioned to reach one who is of no relation to the decedent.

> It is a tempting thought: to appoint this grandmother, and thus to vest in one person the handling of all the assets of this minor. However, the Court perceives that to do this would be error.

This language is subject to two interpretations:

(1) The trial court, having considered the questioned suitability of appellee, believed that on the facts of this case her discretion should not be exercised in favor of jumping over this person to the appointment of an outsider; or,

(2) The trial court thought that its discretion did not extend to the appointing of an outsider in general, and if it did so here, it would be committing error.

Given this ambiguity in the Memorandum Opinion, we deem it appropriate to remand the case to the trial court so that it can make clear on the record its exercise of the discretion we have concluded it possesses.

---

7. Appellant acknowledges that there are no District of Columbia cases supporting the ability of a minor to maintain his priority as an administrator through the appointment of his guardian. Cases from other jurisdictions which allow a guardian to serve as administrator for the minor do not involve statutes which contain the precise language of D.C.Code 1973, § 20–334(b). *See, e.g., Phillips v. Gladney,* 234 Ga. 399, 216 S.E.2d 297 (1975); *In re Estate of Thelan,* 9 Ariz.App. 157, 450 P.2d 123 (1969).

## III

On cross-appeal, appellee Shorter contends that it was an abuse of discretion for the probate court to deny her motion under Super.Ct.Civ.R. 60(b) for relief from the January 3, 1980, determination of paternity. Appellee argues that she is entitled to relief on the basis of excusable neglect, Rule 60(b)(1); newly discovered evidence, Rule 60(b)(2); and the general catch-all provision of Rule 60(b)(6), "any other reason justifying relief from the judgment."

■ The substance of appellee's claim for relief on the basis of excusable neglect and general equitable reasons is that she was prejudiced because she could not afford counsel for the hearing. The absence of counsel, however, does not justify relief from the court's finding. Because appellee's opposition to appellant's petition made the paternity question an issue at this proceeding, it was proper for the court to determine the question at that time. Appellee had no constitutional or procedural right to have counsel appointed for her during the hearing.[8] Furthermore, the court's finding that appellee decided to appear without counsel was not clearly erroneous upon the basis of the record here.

■■ Appellee also contends that relief is warranted because the court applied improper standards in determination of the disputed paternity. D.C.Code 1978 Supp., § 16–909 maintains the presumption of paternity based on marriage. We find that the court correctly applied this presumption.[9] In addition, the court heard the testimony of the child's mother and grandmother indicating that decedent fathered Theron. The finding of paternity was supported by substantial evidence and hence cannot be disturbed on appeal. *See Hart v. Cherner*, D.C.App., 178 A.2d 919 (1962).

Finally, appellee has not shown that there is newly discovered evidence that would probably produce a different outcome on retrial. *See, e.g., Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969), *cert. denied*, 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695 (1970); *Krock v. Electric Motor & Repair Co.*, 339 F.2d 73 (1st Cir. 1964). Any evidence that appellee did not produce at the hearing could have been collected by her earlier through the exercise of reasonable diligence. She made a proffer at the hearing that she would have produced evidence if she had had more finances to obtain the aid of counsel. The court considered this evidence and concluded that, even if it were produced, it would not affect the decision that the decedent had fathered the child.

■ Motions to vacate a judgment pursuant to Rule 60(b)(6) are committed to the trial court's sound discretion. *Union Storage Co., Inc. v. Knight*, D.C.App., 400 A.2d 316 (1979). Finding no abuse of such discretion, we affirm the court's denial of the motion of appellee Shorter to vacate the court's determination of paternity.

In sum, the court's denial of appellee's Rule 60(b) motion is affirmed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

8. Case law does not support appellee's assertion of a right to counsel at this hearing. The interests of appellee are not the same as that of the alleged father in a paternity suit. Those cases dealing with paternity proceedings are therefore not relevant here. *See, e.g., Salas v. Cortez*, 24 Cal.3d 22, 154 Cal.Rptr. 529, 593 P.2d 226 (1979) (due process requires appointment of counsel to represent indigent defendants in paternity proceedings where state appears as party or on behalf of mother); *Hepfel v. Bashaw*, 279 N.W.2d 342 (Minn.1979) (paternity adjudication); *District of Columbia v. Prather*, D.C.App., 207 A.2d 119 (1965) (paternity proceeding is quasi-criminal). *See also Lassiter v. Dep't of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (refusal to appoint counsel for indigent parent in parental status termination proceeding not violative of due process).

9. Appellee, arguing that D.C.Code 1978 Supp., § 16–909 eliminates a firm presumption that a husband is the father, focuses on § 16–909(b), which states, "If questioned, a presumption created by subsection (a)(1)–(3) may be tried and determined by the Superior Court." The probate court did try this issue; the court, having found no evidence to overcome the presumption, might properly consider this presumption, along with all evidence presented or proffered.