Themed Rests., Inc. v Zagat Survey, LLC (2004 NY Slip Op 24299)

Themed Rests., Inc. v Zagat Survey, LLC

2004 NY Slip Op 24299 [4 Misc 3d 974]

August 19, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, November 16, 2004

[*1]
Themed Restaurants, Inc., Doing Business as Lucky Cheng's, Plaintiff,
v
Zagat Survey, LLC, et al., Defendants.
Supreme Court, New York County, August 19, 2004

APPEARANCES OF COUNSEL

Ravi Ivan Sharma, New York City, for plaintiff. Paul, Weiss, Rifkind, Wharton & Garrison, LLP, New York City (Martin London and Audra J. Soloway of counsel), for defendants.

{**4 Misc 3d at 974} OPINION OF THE COURT

Diane A. Lebedeff, J.
Disregarding the common wisdom that "all publicity is good publicity," a restaurant owner sues over its review in a Zagat restaurant {**4 Misc 3d at 975}guide. This dispute presents a nationwide issue of first impression, for no court has been called upon to consider the standards applicable to a defamation claim raised against a review of a commercial establishment based upon combined extracts of quoted anonymous consumer comments, accompanied by ratings based upon scores given by those consumers. Additionally, as to New York law, the motion highlights the need for clear guidance in relation to the level of pleading specificity required to plead malice in a defamation claim where free speech and First Amendment protections are applicable.

Background

Plaintiffa New York City restaurant ownersues the Zagat Survey, LLC, for libel, trade libel and negligence. Defendant moves to dismiss (CPLR 3211) and seeks an award of sanctions (CPLR 8303-a; 22 NYCRR part 130).
The restaurant at issue is named Lucky Cheng's, which is located at 24 First Avenue in Manhattan. As described by its owner, Lucky Cheng's is a theme restaurant with a drag queen cabaret, where female impersonators are both waiters and performers and customer participation contributes to the entertainment. The 2004 Zagat Survey for New York City Restaurants (2004 NYC Restaurant Survey) contains this text, quoted in its entirety as follows:
"God knows 'you don't go for the food' at this East Village Asian-Eclecticrather you go to 'gawk' at the 'hilarious' 'cross-dressing' staff who 'tell dirty jokes', [*2]perform 'impromptu floor shows' and offer 'lap dances for dessert'; obviously, it 'can be exhausting', and weary well-wishers suggest they 'freshen up the menuand their makeup.' " (Id. at 74.)
On a scale from 0 to 30, the food is rated as 9 and the decor and service is rated as 15.[FN1] 

The complaint alleges that, following the issuance of the 2004 NYC Restaurant Survey in October of 2003, Lucky Cheng's suffered a 35% drop in business.
The Zagat approach to its reviews is explained by the acknowledgments page at the front of the 2004 NYC Restaurant Survey {**4 Misc 3d at 976}as follows: "The reviews published in this guide are based on public opinion surveys, with numerical ratings reflecting the average scores given by all survey participants who voted on each establishment and text based on direct quotes from, or fair paraphrasings of, participants' comments." Consumers' numerical ratings of the elements of food, decor and service are made on a scale of 0 to 3 and, to reach the published rating numbers, are averaged and multiplied by 10.
Zagat Survey, LLC is reputed to be the world's leading provider of consumer survey-based dining, travel and leisure information. The 2004 NYC Restaurant Survey at issue is one volume of a series of Zagat guides, now approximately 50 in number, which cover restaurants, hotels, and life-style subjects such as shopping and nightlife. The first Zagat publication was a 1979 mimeographed compilation of comments on New York City restaurants produced by Tim and Nina Zagat, cofounders and cochairs of Zagat Survey.

Application of Defamation Law to a Survey and Summary of Consumer Reviews

Every defamation claim is governed by the basic standard that a libel or slander plaintiff must plead that the statement at issue is "both false and defamatory" (Brian v Richardson, 87 NY2d 46, 51 [1995]). Additionally, where, as here, plaintiff is a commercial enterprise open to the public and the comment is made by the press, plaintiff must plead constitutional malice, also termed actual malice, i.e., that the statement was made with knowledge of falsity or with such reckless disregard of truth that the publisher or author in fact "entertained serious doubts" as to the truth of a published statement (see St. Amant v Thompson, 390 US 727, 731 [1968]; Sweeney v Prisoners' Legal Servs. of N.Y., 84 NY2d 786 [1995]).[FN2]{**4 Misc 3d at 977}
[*3]
The defense claims that its work is exempt from a defamation claim because its words are an expression of opinion protected by the First Amendment. Generally, for reasons stated in the leading decision in this area, Mr. Chow of N.Y. v Ste. Jour Azur S.A. (759 F2d 219, 230 [2d Cir 1985]), a restaurant review, no matter how harsh, is not an appropriate basis for a libel action because it reflects an individual's subjective opinion about the quality of food, service and decor (see also Kuan Sing Enters. v T.W. Wang, Inc., 86 AD2d 549 [1st Dept 1982], affd 58 NY2d 708 [1982]; Twenty-Five E. 40th St. Rest. Corp. v Forbes, Inc., 37 AD2d 546 [1st Dept 1971], affd 30 NY2d 595 [1972]; see Annotation, Liability for Defamation for Criticizing Restaurant's Food, 96 ALR3d 609 [1980 and Supp 2001]).[FN3] 

Nonetheless, where a review contains false statements of objective fact, sometimes termed "historic fact," regarding items such as the physical conditions of a restaurant or the ingredients of a dish, the false statement can be actionable (e.g., Mr. Chow of N.Y. v Ste. Jour Azur S.A., supra, 759 F2d at 226 [manner of serving Peking duck]; Terillo v New York Newsday, 137 Misc 2d 65 [Civ Ct, NY County 1987] [review incorrectly listed ingredients]).
Here, present is a distinctive fact pattern in that the review at issue is not that of an individual diner, but rather is an edited summary of multiple anonymous consumer opinions. The question of legal interest is whether the use of a survey and of anonymous consumer opinions alters the traditional legal analysis, as plaintiff suggests. These factors, upon reflection and for the reasons stated below, can be accommodated within existing and accepted defamation [*4]principles.
First, as to the use of collected data, surveys and polls are a traditional way to assess opinion and can be assailed only if known falsity was present or, to paraphrase St. Amant v Thompson (supra, 390 US at 732), a reckless defendant had "obvious reasons to doubt the veracity of the informant[s] or the accuracy{**4 Misc 3d at 978} of [the] reports" (see, knowing inaccurate presentation of data, Goldwater v Ginzburg, 414 F2d 324, 334 [2d Cir 1969], cert denied 396 US 1049 [1970], reh denied 397 US 978 [1970] [poll of "professional opinions" entitled "What Psychiatrists Say About Goldwater," published after a warning by the American Psychiatric Association that "professional opinions" required a "thorough clinical examination" was basis for successful libel suit by former presidential candidate Barry Goldwater]). Typically, the use of multiple sources for collected information serves as its own protection against defamation claims (see Farrakhan v N.Y.P. Holdings, 238 AD2d 197, 197 [1st Dept 1997], quoting New York Times Co. v Sullivan, 376 US 254, 280 [1964] [reporters' review of numerous sources "conclusively demonstrates that the article was not published 'with knowledge that it was false or with reckless disregard of whether it was false or not' "]). Accordingly, that a survey is at issue does not require development of a new and different legal analysis.
Second, as to quoted opinions, the use of quotations is an accepted approach to conveying the remarks of others (Orr v Lynch, 60 AD2d 949, 950 [3d Dept 1978], affd on mem below 45 NY2d 903 [1978] ["The defendants herein were clearly serving their informational function in relaying (the quoted) opinions"]; Masson v New Yorker Mag., Inc., 501 US 496, 511 [1991] ["Quotations allow the reader to form his or her own conclusions and to assess the conclusions of the author, instead of relying entirely upon the author's characterization of her subject"]). A claim of actual alteration of the material quoted in a manner adverse to the plaintiff is actionable (Goldwater v Ginzburg, supra, 414 F2d at 334 [author "added to the original letters phrases, sentences and paragraphs" negative material]). No support is found for plaintiff's suggestion that the use of anonymous quotations from consumer surveys alone renders the text susceptible to a special challenge.
Third, as to the use of anonymous sources, the factor to be scrutinized is whether the author or publisher fully disclosed the basis upon which quoted comments are considered credible (Brian v Richardson, supra, 87 NY2d at 53-54 [article referred to "identified and unidentified sources" and "there was no suggestion in the article that there were additional undisclosed facts on which its credibility assessment had been based"]). This factor traditionally may be embraced by consideration of whether a writing is facially exempt from treatment as protected opinion (Steinhilber v Alphonse, 68 NY2d 283, 289 [1986] ["A '{**4 Misc 3d at 979}pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based" or "does not imply that it is based upon undisclosed facts"]; Flowers v Carville, 310 F3d 1118, 1129 [9th Cir 2002] ["where a publication sets forth the facts underlying its statement . . . and those facts are true, the Constitution protects that opinion from liability for defamation"]; see also Milkovich v Lorain Journal Co., 497 US 1, 19 [1990]). Here, the publisher disclaims reliance upon anything other than the submission of a broad range of opinions, and inserts alerting symbols to indicate (1) if consumer comments were mixed, rather than uniform, and (2) if a scant number of responses put the basis of the review below a "low response" threshold. Given the disclosure of methodology and the lack of endorsement of the credibility of any particular [*5]consumer, the court rejects the contention that the use of anonymous quotations alone requires the imposition of heightened or novel scrutiny.
Based on the foregoing, the court is satisfied that the distinctive features here do not require departure from the legal standards normally governing defamation by a consumer-oriented review of a public enterprise or figure, and that analysis of the complaint's adequacy may proceed along traditional lines.

Truth, Falsity and Opinion

The court turns to the issue of whether the text in the review of Lucky Cheng's printed in the 2004 NYC Restaurant Survey is protected opinion or whether it contains a potentially defamatory factual statement which is capable of being false and is claimed to be false. This inquiry is conducted by reviewing the material "from the perspective of an 'ordinary reader' of the statement" (Mr. Chow of N.Y. v Ste. Jour Azur S.A., supra, 759 F2d at 224).[FN4]{**4 Misc 3d at 980}

The critical objected-to statements in the five-line review appear to be: (1) "God knows 'you don't go for the food'," and (2) "weary well-wishers suggest they 'freshen up the menuand their makeup.' " These statements express a viewpoint and are subjective in nature. The comment regarding the suggestion to "freshen up" as it relates to menu choices logically cannot be read to imply the food served is unwholesome or fails to meet health standards, and an average reader would not understand it as a negative assertion concerning sanitation and cleanliness at Lucky Cheng's. The balance of the text is not challenged as inaccurate or false.
As to the ratings, it strikes the court that numerical ratings facially are quintessential opinion, no different than rating a film zero to five out of five stars. Although the complaint attempts to characterize the ratings as objectively "false" by asserting it portrays plaintiff's establishment as being "substandard and unworthy of patronage," plaintiff's phrasing [*6]precisely illustrates why a restaurant review is classified as opinionthe reviewer assesses subjective qualities, considers his or her own standards, and uses words or scores to describe the experience so that the reader can decide whether to visit the establishment. No more is present here. While this restaurant owner believes it has "hit the sweet spot" with its menu and food choices, the Zagat reviewers suggest the menu selection misses the mark a bit, notwithstanding that the establishment as a whole offers an entertaining and engaging evening. This disagreement over taste and fashion is not the stuff of defamation.
The court concludes that the words and ratings at issue reflect the collected subjective judgments of individual consumers, which "a reasonable reader would conclude . . . is an opinion" of each consumer and worthy of constitutional protection, rather than a statement of fact (Millus v Newsday, Inc., 89 NY2d 840, 842 [1996], cert denied 520 US 1144 [1997]). Accordingly, as to truth or falsity, the complaint does not plead an actionable statement of fact and discovery is not warranted.{**4 Misc 3d at 981}

Constitutional Malice

Defendant also urges that the complaint is deficient for failure to plead constitutional malice. As noted above, because the restaurateur plaintiff is a commercial establishment open to the publicthe equivalent of a public figureit must plead constitutional or actual malice. Plaintiff urges that it has satisfied this standard based upon the facts in its possession at the time it served its complaint and that discovery is needed to ascertain further facts bearing upon malice.
This issue is of particular interest because New York cases appear to give conflicting guidance on the degree of specificity required when pleading constitutional malice. On one hand, some New York cases require pleading some level of factual detail in relation to constitutional malice (Jimenez v United Fedn. of Teachers, 239 AD2d 265, 266 [1st Dept 1997], appeal dismissed 90 NY2d 890 [1997] [public figure plaintiff "was required but failed to allege facts sufficient to show actual malice with convincing clarity"]; Pontarelli v Shapero, 231 AD2d 407, 412 [1st Dept 1996] [complaint sufficient which set forth "gravamen of plaintiff's action" by pleading specific facts and motive]; see also Red Cap Valet v Hotel Nikko [USA], 273 AD2d 289, 290 [2d Dept 2000] ["plaintiff failed to allege any facts from which malice could be inferred" and conclusory allegations were insufficient to overcome qualified privilege asserted]; see generally Fairman, The Myth of Notice Pleading, 45 Ariz L Rev 987 [Winter 2003] [examining the many types of actions, including libel actions, in which federal courts require heightened particularity in pleading]). On the other hand, seemingly reflecting the general theory of notice pleading and the New York rule that a pleading is to be construed liberally in favor of the plaintiff (CPLR 3211, 3013), at least one New York case suggests specific detail as to constitutional malice may be advanced later in the proceeding (Alianza Dominicana, Inc. v Luna, 229 AD2d 328, 329 [1st Dept 1996], lv dismissed 89 NY2d 1029 [1997] [dismissal of libel claim for inadequate pleading of malice was "premature" and public figure plaintiff could clarify the issue "after discovery has been completed"]).
A clear standard on the issue of specificity in relation to pleading constitutional malice in a case touching upon free speech rights is highly desirable. Indeed, federal courts have held it imperative that there be a clear and sufficient pleading of intent in this class of cases (see Franchise Realty Interstate Corp. v San Francisco Local Joint Executive Bd. of Culinary Workers, 542 F2d {**4 Misc 3d at 982}1076, 1082-1083 [9th Cir 1976], cert denied 430 US 940 [1977] ["where a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required"]). This vigilance is no less important in New York, for the free speech guarantee of the New York State Constitution is even more stringent than that of the First Amendment (NY Const, art I, § 8 ["(e)very citizen may freely speak, write and publish . . . sentiments on all subjects"]; O'Neill v Oakgrove Constr., 71 NY2d 521, 528-529 [1988] ["The expansive language of our State constitutional guarantee, its formulation and adoption prior to the Supreme Court's application of the First Amendment to the States, the recognition in very early New York history of a constitutionally guaranteed liberty of the press, and the consistent tradition in this State of providing the broadest possible protection to the sensitive role of gathering and disseminating news of public events, all call for particular vigilance by the courts of this State in safeguarding the free press against undue interference" (citations and internal quotation marks omitted)]).
In the instant case, the court holds that specificity in the pleading of constitutional or actual malice is required. The court finds here no portion of the pleading which either directly or by implication satisfactorily pleads defendant made a defamatory statement with knowledge of falsity of the statement or acted with such reckless disregard of truth that the publisher or author in fact "entertained serious doubts as to the truth of his publication" (St. Amant v Thompson, supra, 390 US at 731). Proper support for constitutional malice cannot be met by pleading that defendants had "an obligation to insure" the rating was factually true (Harte-Hanks Communications, Inc. v Connaughton, 491 US 657, 688 [1989] ["failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard"]). As to the claim that the Zagat knew or should have known that its survey and assessment procedures could be improved or that the participating consumers might have been screened somewhat differently in an allegedly more thorough fashion (see Steven A. Shaw, The Zagat Effect, Commentary Magazine [Nov. 2000] [containing the criticisms urged by plaintiff]), such assertions raise only a challenge to the reasonableness of defendants' methodology, sounding in negligence and lacking the requisite claim {**4 Misc 3d at 983}of an actual or reckless eliciting or presentation of false information (Masson v New Yorker Mag., Inc., supra, 501 US at 510 ["Mere negligence does not suffice"]; Time, Inc. v Pape, 401 US 279, 291 [1971] [there is "a constitutional zone of protection for errors of fact caused by negligence"]).
Accordingly, the court finds that the pleading of constitutional or actual malice is insufficient and that a negligence claim cannot be utilized to avoid the constitutional requirement that plaintiff plead a higher level of fault.

Conclusion

Accordingly, the motion to dismiss is granted. No sooner than five days after service of a copy of this order with notice of entry and a proposed judgment upon plaintiff, the clerk shall enter judgment accordingly upon the presentation of appropriate papers.
The request for sanctions is denied, given that the action is found to have posed novel [*7]issues and not to have been frivolous either as a matter of law or as found by the court in the exercise of its discretion (CPLR 8303-a; 22 NYCRR part 130; Entertainment Partners Group v Davis, 155 Misc 2d 894, 897-901 [Sup Ct, NY County 1992, Lebedeff, J.], affd 198 AD2d 63 [1st Dept 1993]). Further, it has bearing upon the sanctions request that plaintiff did not oppose dismissal of the first, second, fifth, eighth, tenth, and eleventh causes of action, nor of an identified portion of the sixth cause of action.

Footnotes

Footnote 1: The restaurant received a food rating of 12 or better in the past ("good" in the fair to good range). Despite a management change and upgrading in April of 2002, its 2003 food rating was 8 and, in 2004, the food rating was 9 (both "fair" in the poor to fair range). Plaintiff submits printed copies of Web pages from other Internet sites with favorable consumer reviews of Lucky Cheng's written in 2002 and 2003, with some mentioning a new chef and "great" food.

Footnote 2: The court rejects the plaintiff's contention that it is not a public enterprise or public figure for the purposes present here. The general rule is "because a restaurant is a place of public accommodation that seeks public patrons, it is a public figure for the limited purpose of a food review or reporting on its goods and services" (Pegasus v Reno Newspapers, Inc., 118 Nev 706, 721, 57 P3d 82, 92 [2002], cert denied 540 US 817 [2003] [adopting rule applied by other states]; Steak Bit of Westbury, Inc. v Newsday, Inc., 70 Misc 2d 437 [Sup Ct, Nassau County 1972] [New York application of public figure standard]). Generally, this rule is applied to many types of consumer reviews of commercial plaintiffs (Steaks Unlimited, Inc. v Deaner, 623 F2d 264, 280 [3d Cir 1980] ["Application of the public figure rule to (commercial plaintiffs) . . . serves the values underlying the First Amendment by insulating consumer reporters and advocates from liability unless they have abused their positions by knowingly or recklessly publishing false information"]), and a similar rule governs common-law trade libel complaints (Global Merchants v Lombard & Co., 234 AD2d 98 [1st Dept 1996]).

Footnote 3: Because restaurant reviews fall into a sui generis category commonly recognized as protected opinion, there is no need to analyze a restaurant review's "broader context" in the field of publishing to determine whether a reader would believe the review as a whole to be fact or opinion (compare Brian v Richardson, supra, 87 NY2d at 53 [newspaper Op Ed article, court to consider whether the " 'broader context' in which (the alleged defamation was) published provided some signals to the reader that its contents were expressions of opinion"]).

Footnote 4: It is not required that the statement under scrutiny be dead-on accurate (New York Times Co. v Sullivan, supra, 376 US at 271-272 ["(E)rroneous statement is inevitable in free debate, and . . . must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive' "]). Further, neither imprecise phrasing nor simple misinterpretation render a statement actionable (Bose Corp. v Consumers Union of U.S., Inc., 466 US 485, 513 [1984], reh denied 467 US 1267 [1984] ["The choice of such language, though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella. (It should not be that an) individual using a malapropism might be liable, simply because an intelligent speaker would have to know that the term was inaccurate in context, even though he did not realize his folly at the time"]; see, as to misinterpretation, Suozzi v Parente, 202 AD2d 94, 102 [1st Dept 1994], lv denied 85 NY2d 923 [1995] ["misinterpretation of a source or the resolution of an ambiguity adversely to the plaintiff" not actionable]; Freeman v Johnston, 192 AD2d 250, 252 [1st Dept 1993], affd 84 NY2d 52 [1994], cert denied 513 US 1016 [1994] ["possibly mistaken inference" relating to source's statement not actionable]).