OPINION OF THE COURT
Sara P. Schechter, J.
Petitioner’s motion before the court seeks counsel fees and various court costs. Respondent opposes the application for counsel fees but concedes liability for court costs. He requests that such costs as the court may award, however, be held in escrow pending the outcome of his appeal in this matter.
Paternity was adjudicated in this proceeding by order dated January 30, 1984, following a decision declaring the Statute of Limitations (Family Ct Act, § 517, subd [a]) unconstitutional. (Matter of Patricia R. v Peter W., 120 Misc 2d 986.) Support was awarded for the child by decision and order dated May 7, 1984. Respondent is appealing both orders.
In view of the significant questions raised in the appeal and considering the fact that respondent is now making substantial contributions toward the support of the child, the application to hold court costs in escrow is granted. The amount of $712 is awarded for such costs,[1] to be held in escrow by respondent’s attorney, Gilbert Holmes, Esq., until further order of this court.
Petitioner’s attorney was assigned at arraignment on December 28, 1982, from the Indigent Defendants Legal Panel pursuant to article 18-B of the County Law.[2] The motion for the award *88 of counsel fees to this attorney presents novel questiqns of law: May counsel fees be awarded pursuant to section 536 of the Family Court Act to an attorney assigned from the Indigent Defendants Legal Panel, and, if so, at what rate should the attorney be compensated?
Section 536 of the Family Court Act provides: “Once an order of filiation is made, the court in its discretion may allow counsel fees to the attorney for the prevailing party, if he or she is unable to pay such counsel fees.” Respondent argues that since petitioner is not personally obligated to pay her attorney, there are no counsel fees which she is “unable to pay.” Although respondent’s argument has a narrow, sophistic logic, it runs counter to the spirit of the statutory scheme of which section 536 of the Family Court Act and article 18-B of the County Law are a part.
The predecessor of section 536 of the Family Court Act was section 120 of the Domestic Relations Law, part of thé so-called “illegitimacy bill” (L 1925, ch 255). The imposition of statutory responsibility for counsel fees upon the respondent in paternity cases was an extension to out-of-wedlock children of the common-law duty of in-wedlock fathers to pay legal fees where such fees were “necessaries” for the child. (Elder v Rosenwasser, 238 NY 427.)
The legislative history of the illegitimacy bill reveals that its purpose was to give recognition to the rights of illegitimate children as distinct from the rights of the community upon whom they might become dependent. This shift in focus was to be achieved, however, without any lessening of the protections already accorded to the taxpayer.[3]
In 1965, in response to the United States Supreme Court decision in Gideon v Wainwright (372 US 335), New York enacted article 18-B of the County Law as a statutory scheme for legal representation of indigent criminal defendants. Ten years later that system was expanded to provide representation for indigent Family Court litigants, both petitioners and respondents, as specified in section 262 of the Family Court Act.
The clear intent of article 18-B was to provide a practical means of implementing the right to counsel for litigants who would otherwise be unable to obtain representation. There is *89 absolutely no indication that it was designed to alleviate the financial obligations of those able to hire counsel. On the contrary, section 722-d of the County Law permits the court to terminate the assignment of counsel or to require partial payment when it appears that the person represented can afford counsel. This issue may be raised during the course of the proceeding subsequent to the arraignment. (People v Bell, 119 Misc 2d 274.)
The court must construe section 536 of the Family Court Act in a manner which is consistent with the court’s duty to see that public funds allotted for indigent litigants are appropriately utilized. “To permit the depletion of available funds by those who are able to pay will cause hardship to those legitimately entitled to free counsel and to the public who ultimately must bear the cost[s].” (Matter of Cheri H., 121 Misc 2d 973.) We conclude, therefore, that respondent is liable for that portion of petitioner’s counsel fee which he is able to pay, notwithstanding that the attorney was assigned rather than privately retained.
The question of the rate of compensation must now be confronted. Petitioner’s attorney has requested the hourly rate of $110, which he charges private clients. His representation of petitioner in this complex and hotly contested proceeding has been exemplary, and the court would not hesitate to approve the requested rate had the attorney been privately retained. Since he was assigned, however, he undertook to represent petitioner at the rate paid to panel attorneys, $25 per hour for in-co.urt time, and must now be held to that commitment. Much as thé court would wish to see panel attorneys better compensated for such good work, to permit the rate to be thus altered would tend to create a public perception of impropriety which could undermine the viability of the Indigent Defendants Legal Panel.
Respondent has stated that in the event the court should rule as it has, he wishes a hearing on his current ability to pay the counsel fee. Accordingly, the case is set down on December 4, 1984, for further proceedings consistent with this decision.

. HLA test, $600; service of summons, $35; service of subpoena, $52; transcript of March 21, 1983 hearing, $25.

. Although the petitioner in a paternity proceeding is not specifically *88 named as a party entitled to assigned counsel in subdivision (a) of section 262 of the Family Court Act, the propriety of the assignment is not at issue in the instant motion.

. See Women’s City Club of New York memorandum in favor of the illegitimacy bill.