OPINION OF THE COURT
M. Hallsted Christ, J.
The above-captioned special proceeding was commenced by the petitioner, under CPLR article 75, to stay arbitration of respondents’ respective claims for uninsured motorist benefits.
On December 19, 1986, respondent Ruiz, the petitioner’s assured, was involved in a motor vehicle accident. Corespondent Adams was a passenger in the assured’s vehicle. The adverse vehicle was owned by Felix M. Maldonado.
As gleaned from a review of the applicable police accident report, the vehicle’s operator, Nieves Maldonado, was charged, inter alia, with the violation of Vehicle and Traffic Law § 509 (1) and § 319 (1).
Section 319 (1) recites the penalty imposed, inter alia, for the operation of a motor vehicle without benefit of insurance.
Section 509 (1) deals with the operation of a motor vehicle without benefit of a license therefor.
Pursuant to Vehicle and Traffic Law § 312 the failure to produce proof of financial security, upon request of a police officer, is deemed presumptive evidence of the operation of a motor vehicle without benefit of insurance protection.
The petitioner asserts that the failure to report the accident to the police department is a fatal bar to arbitration.
Such assertion, in this context, cannot be advanced in good faith and is untenable.
Inasmuch as the matter at bar concerns the uninsured motorist endorsement of an insurance policy issued by the petitioner to respondent Ruiz, upon the payment of the premium demanded and collected, the petitioner was obliged to investigate the respective claims in a more significant and substantial manner than what is evident from a review of the record (see, 11 NYCRR 216.5).
Had the petitioner merely sought to obtain the applicable MV 104-a, it would have discerned that the subject occurrence had been timely reported to the proper authorities.
The petitioner fails to cite any authority, either statutory or contractual, for the proposition advanced, to wit: that an insured must, as a condition precedent to the arbitration of an *817 uninsured motorist claim, report an accident involving an identified uninsured motorist to the local authorities.
It is only in the context of an accident involving an unidentified motorist that the failure to report same to the proper authorities, within specified and limited parameters of time, may be raised as a bar to arbitration (see, Insurance Law § 5208 [a] [2] [A] [ii]).
The subject endorsement, in essence, tracks the statutory obligation.
Petitioner further asserts, as an alternate basis for the relief requested, that claimants’ failure to afford it with prompt notice of their respective claims may be interposed as a bar to arbitration.
It clearly appears from the papers submitted that the petitioner was first afforded notice of the respective uninsured motorist claims on January 12, 1987, within 30 days of the underlying occurrence and once again on January 30, 1987, when a copy of the January 12, 1987 correspondence was mailed anew, together with a copy of the assured’s accident report and completed no-fault form.
Pursuant to the applicable uninsured motorist endorsement, notice within 90 days of the occurrence is deemed timely.
Moreover, the petitioner’s disclaimer dated April 6, 1988, responding to claimant’s third distinct notice for uninsured motorist benefits, dated December 15, 1987, is untimely.
The failure to offer any explanation for the approximate four-month delay in issuing its disclaimer renders same void as a matter of law (see, Hartford Ins. Co. v County of Nassau, 46 NY2d 1028).
In a last gasp effort to obtain a stay, the petitioner misstates the law and attempts to demonstrate through multitiered hearsay uttered by an unnamed individual to an unidentified investigator, employed by the petitioner, that the offending vehicle was insured at the time of loss.
Conspicuous by its absence is any documentary evidence that would tend to raise an issue of fact regarding the insured status of the offending vehicle. It appears that the petitioner failed to perform anything but a perfunctory investigation. It does not appear that the petitioner reviewed its claim file, let alone sought information from the files maintained by the Department of Motor Vehicles.
Contrary to petitioner’s assertion, the petitioner seeking an *818 arbitration stay bears the initial burden of proof to demonstrate the insured status of the adverse vehicle (see, National Grange Mut. Ins. Co. v Diaz, 111 AD2d 700 [1st Dept]; Matter of Wausau Ins. Co. v Predestin, 114 AD2d 900; Country-Wide Ins. Co. v Donero, 121 AD2d 325 [1st Dept]).
Inasmuch as the claimant is neither assisted by a presumption of noninsurance nor burdened by a presumption of insurance (Matter of Foster [MVAIC], 55 Misc 2d 784); inasmuch as the petitioner has failed to submit any evidence of insurance and has merely baldly asserted the existence of same; inasmuch as the failure to produce upon demand proof of financial security is deemed presumptive evidence of a lack thereof (Vehicle and Traffic Law § 312); inasmuch as the submission of conclusory and unsupported allegations is insufficient to raise a triable issue of fact warranting an arbitration stay (see, Matter of Commercial Union Ins. Cos. [Pouncy], 120 AD2d 382 [1st Dept]), petitioner’s application is denied and the parties are directed to submit to arbitration in an expeditious fashion.
The petitioner has advanced multiple phantom contentions concerning its purported right to obtain an arbitration stay, which have had the effect of delaying claimants’ opportunity to seek compensation for the injuries alleged to have been sustained as a result of the December 19, 1986 accident.
It is axiomatic that justice delayed is justice denied.
"The object of arbitration is to achieve a final disposition * * * in an easier, more expeditious and less expensive manner (5 Am Jur 2d, Arbitration and Award, § 1, p 519; 22 Carmody-Wait 2d, NY Prac, § 141:1, pp 716-717).” (Matter of Maye [Bluestein], 40 NY2d 113, 117-118.)
"The Arbitration Law was enacted to facilitate the settlement of disagreements, to expedite their disposition and to avoid delay inherent in litigation (Matter of Zimmerman v. Cohen, 236 N. Y. 15, 21; Matter of Gera Fabrics [Liberty Fabrics of N. Y.], 14 Misc 2d 489, aff'd. 6 A D 2d 1001).” (Matter of New York Cent. R. R. Co. [Erie R. R. Co.], 30 Misc 2d 362, 367.) (Emphasis supplied.)
The raising of sham contentions; the misstatement regarding respondents’ burden of proof; the submission of rank hearsay in support of its bald assertion of coverage; the apparent failure to conscientiously investigate the subject claims; and the interposition of an invalid disclaimer approximately four months subsequent to the service of claimants’ third distinct notice, all lead this court to conclude that the *819 petitioner’s commencement of the instant special proceeding can only be described as frivolous.
CPLR 8303-a (a) provides: "If in an action to recover damages for personal injury * * * an action or claim is commenced * * * or a counterclaim, defense or cross claim is commenced * * * that is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs and reasonable attorney’s fees not exceeding ten thousand dollars.”
A finding that the action, claim or defense "was commenced, used or continued in bad faith, solely to delay or prolong the resolution of the litigation”, will support a finding of frivolity and afford the court with the authority to invoke the statutory sanction against either the litigant and/or its counsel. (CPLR 8303-a [c] [i].)
It is beyond peradventure that the commencement of the instant special proceeding, suffused with inaccuracies and misrepresentations, was a product of bad faith and served solely to delay resolution of the underlying claims for personal injuries.
That the statute makes reference to "an action” is not dispositive, as a special proceeding, such as the one at bar, is encompassed within the definition of the term "action” (see, CPLR 105 [b]).
Upon review of the applicable legislative history, the court concludes that CPLR 8303-a may be invoked to sanction the petitioner.
As noted in the Governor’s program memorandum, the subject legislation was "designed to address availability and affordability of liability insurance” (1986 NY Legis Ann, at 134).
To achieve this stated goal, the Legislature extended the court’s authority to impose monetary sanctions against litigants and/or counsel for the commencement and/or continuation of frivolous actions, claims and defenses from the dental, medical and podiatric malpractice sphere to those actions directed toward the recovery of damages for personal injury, property damage and wrongful death.
The Legislature concluded that such sanction extension would, among other components of the package enacted, serve the stated purpose to enhance the availability and affordability of liability insurance by reducing unnecessary litigation *820 costs and serve as "[a] critical means of assuring justice to all parties”. (See, 1988 NY Legis Ann, at 136.)
Whether classified as a remedial statute, warranting liberal construction so as to carry out the reforms intended and to promote justice (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 321) or as a statute in derogation of the common law, necessitating strict construction (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 304), it is quite clear that CPLR 8303-a was designed to promote the public good and accordingly should be afforded "a liberal construction and be expounded in such a manner that [it] may, as far as possible, attain the end in view.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 341.)
The report of the Governor’s Advisory Commission on Liability Insurance, entitled "Insuring our Future”, provided in pertinent part: "The costs of litigation are a burden to defendants and their insurers without being of direct benefit to the plaintiffs. Legal costs eat into plaintiffs recoveries and add to the strains on liability insurance. An increasing portion of plaintiffs’ recoveries goes to cover the costs of litigation, while on the defendants’ side the costs of defense have begun to rival the cost of recoveries and have become a significant factor in the calculus governing the decision to settle * * *. Under our system, the compensation of tort victims necessarily entails significant litigation costs. Nevertheless, the elimination of unnecessary litigation expenses is a vital means of reducing the costs of the tort system without impairing justice for tort victims.” (First Report of Governor’s Advisory Commn on Liability Ins, at 153-154 [Apr. 7,1986].)
The provisions of CPLR 8303-a reflect "[t]he Legislature’s judgment that society has no interest in frivolous claims or defenses. Such legal maneuvers simply add to litigation costs without adding to justice for either plaintiffs or defendants. Indeed, by drawing the time, energy and funds of opposing counsel and of the courts away from meritorious claims and defenses, frivolous litigation reduces the amount of justice in society * * *. The reduction of unnecessary litigation costs is a critical means of assuring justice to both plaintiffs and defendants.” (First Report of Governor’s Advisory Commn on Liability Ins, at 154-155.)
As noted by Assemblyman Leibell on the floor of the Assembly on June 24, 1986 "[i]t was well over a year ago that we had thrust upon us in New York State a very serious crisis, a *821 crisis in the medical insurance area, that quickly evolved into a situation through many areas of the State * * * where we saw that doctors and allied professionals were not able to get coverage necessary for them to continue the practice of their profession in a safe manner. We saw this medical malpractice problem spread into the general liability area * * * and we see it today where it has encroached in all areas of liability * * *. It is that deep pocket syndrome that we are addressing tonight. It has the recognition and desire not only to see that those people who are genuinely injured are properly compensated; but, hopefully, to also recognize that we have come upon an almost lottery system of addressing our claims today * * * we also want to make sure that it is recognized that there are no deep pockets out there. There are just other citizens, other policyholders, other taxpayers who will pay. The problem has been, basically, one of affordability and availability.” (NY Assembly Debates, June 24, 1986, at 385-389.)
On the issues of insurance affordability and availability, Assemblyman Gorski noted: "[t]he package of bills that is presented to the Assembly tonight, and it was passed by the Senate last night, creates an ambience and atmosphere within which I think rates can be affordable and available.” (NY Assembly Debates, June 24, 1986, at 399.)
CPLR 8303-a was passed by the Legislature as a portion of a package of sweeping reforms designed to ameliorate an insurance crisis and is premised upon the following declaration of legislative intent: "The Legislature hereby finds and declares that the State is in the midst of an insurance crisis which affects all aspects of the public and private sectors.” (NY Assembly Debates, June 24, 1986, at 414.)
Assemblyman Lasher, as sponsor, noted: "I think that the willingness on both Houses to go ahead and pass a piece of legislation, that is a strong piece of legislation, that has pieces in it that can be used as a wedge and a club with respect to the insurance carriers will send out a very strong message that it is about time for them to fulfill their responsibility, and I think that will go the longest way to resolve the issues at hand.” (NY Assembly Debates, June 24, 1986, at 405.)
One of the ancillary benefits that flows from the statute’s implementation and a judicial willingness to invoke same against frivolous litigation is to prevent the deplorable usurpation of time, energy and personnel of the judiciary and its *822 support staff, and its corollary to prevent the wasting of public moneys dedicated therefor. It is therefore another factor that leads this court to construe the statute liberally so as to promote and effectuate the intention of the Legislature (see, Matter of Town of Eastchester, 53 Hun 181).
In essence, the petitioner herein has made a preemptive strike against a proceeding designed to afford the claimants with an opportunity to demonstrate their entitlement to recoup damages for personal injuries.
It therefore appears that the special proceeding commenced by the petitioner falls within the penumbra of CPLR 8303-a as its aim was clearly to hinder and delay, if not to preclude the recovery of damages, for personal injuries resulting from the tortious conduct of another.
Its commencement was and its continuance remains a product of bad faith without any reasonable basis therefor. It has, at this juncture, substantially delayed claimants’ opportunity to obtain compensation for their personal injuries, and serves to thwart the quintessential function of arbitration, to wit: the expeditious resolution of disputes.
Upon the filing of a note of issue, by respondents’ counsel, and the payment of the requisite fees, if any, a hearing will be conducted at IAS Part 15 of this court, to quantify the monetary sanction under CPLR 8303-a and to determine whether same shall be imposed against the petitioner, its counsel or both.