■ SHERRON WATSON, an Infant, by Her Parent and Natural Guardian, YVETTE WATSON, et al., Appellants, v CITY OF NEW YORK, Defendant, and NEW YORK CITY HOUSING AUTHORITY, Respondent.—Order, Supreme Court, New York County (Eugene Nardelli, J.), entered July 9, 1990, which, insofar as appealed from, granted the motion of defendant New York City Housing Authority for costs and attorney's fees to the extent of imposing a sanction on plaintiffs' attorney of $2000, unanimously reversed, to the extent appealed from, on the

law, the facts and in the exercise of discretion, and the motion denied, without costs.

The infant claimant was injured in November, 1988 when she was burned by hot water shooting from an allegedly defective water system in an apartment on Convent Avenue in Manhattan. An action alleging negligence in the ownership, operation, maintenance and control of the premises was brought against both the City and defendant New York City Housing Authority (Housing). Shortly after the action was filed, counsel for Housing wrote to plaintiffs' counsel acknowledging their mutual understanding that the action against Housing would be discontinued as soon as the City admitted ownership. However, both defendants, in their answers, denied ownership or operation of the premises at the time of the injury and cross-claimed against each other for contribution and indemnification. Plaintiffs served Notices to Admit on each defendant seeking admissions to allegations that it owned, controlled, operated, managed or maintained the premises. Neither defendant responded formally. Instead, counsel for Housing wrote to plaintiffs' counsel several times stating that the premises were not owned by Housing and requesting him to stipulate to discontinue the action against Housing. Housing also provided a copy of a deed dated April 23, 1987 establishing that on that date, the City had acquired the subject property in an in-rem tax foreclosure action.

Upon plaintiffs' failure to discontinue, Housing moved for summary judgment dismissing the complaint against it and for costs and attorney's fees against plaintiffs' counsel. Attached to its motion papers was a copy of the deed which had already been sent to plaintiffs' counsel plus a sworn statement by a real estate appraisal officer employed by Housing stating, "[P]ursuant to review of the NEW YORK CITY HOUSING AUTHORITY'S records, the NEW YORK CITY HOUSING AUTHORITY did not operate, maintain or control the premises * * * on 11/1/88." The court granted summary judgment and, citing the Rules of the Chief Administrator (22 NYCRR 130-1.1 *et seq.*), imposed a $2000 sanction upon plaintiffs' attorney for bringing and refusing to discontinue the action against Housing when "lack of legal or factual basis was apparent" (22 NYCRR 130-1.1 [c]).

The imposition of financial sanctions is authorized by 22 NYCRR 130-1.1 (a) upon any "party or attorney in a civil action or proceeding who engages in frivolous conduct". Among the types of conduct which will be considered frivolous is that which is determined to be "completely without merit in law or fact" (22 NYCRR 130-1.1 [c] [1]). Furthermore, in

making that determination the court must consider, *inter alia,* "whether or not the conduct was continued when its lack of legal or factual basis was apparent or should have been apparent to counsel" (22 NYCRR 130-1.1 [c]). Although not relied upon by the IAS court in this action and therefore not at issue on this appeal, it should be noted that CPLR 8303-a (b) contains a somewhat overlapping provision permitting the imposition of costs and attorney's fees for the bringing or continuing of a frivolous "action, claim, cross claim, defense or counterclaim" in an action for personal injury, injury to property, or wrongful death.

Clearly, the proper use of sanctions is a desirable and appropriate way to discourage abusive litigation tactics *(see, Matter of Hochberg v Davis,* 171 AD2d 192). Nevertheless, in this case, we find that, since the information available to plaintiffs' counsel concerning the ownership, maintenance, operation and control of the building which was the subject of the within action was sufficiently ambiguous to justify his reluctance to voluntarily discontinue the action against Housing, the imposition of sanctions was unwarranted *(see, Esannason v New York City Hous. Auth.,* 163 AD2d 160). Both defendants denied owning or operating the building. However, both defendants failed to respond with a sworn statement to Notices to Admit and must thereby be deemed to have admitted to the allegations therein that they owned, controlled, operated, managed and maintained the building (CPLR 3123 [a]).

In finding that plaintiffs' counsel should have been aware that Housing had no responsibility for the building, the IAS court relied upon the fact that counsel for Housing responded informally to the Notice to Admit and supplied plaintiffs' counsel with a deed showing that the property had been conveyed to the City in 1987, as well as upon the fact that plaintiffs could have ascertained independently that the City was the owner of record of the property. However, the complaint in this case made very clear that defendants' alleged liability was not based simply on ownership of the building, but on its operation and maintenance, which, as plaintiffs noted in their response to the motion for summary judgment, could have been undertaken by Housing even though it did not itself hold title to the building. Particularly in light of the City's obdurate failure to concede either ownership or operation, Housing's failure to respond to the allegations that it operated the building left plaintiffs' counsel justifiably uncertain as to the propriety of discontinuing the action against

Housing. Indeed, even counsel for Housing was obviously aware that plaintiffs had not been supplied with sufficient information to warrant discontinuance, since upon moving for summary judgment defendant Housing, for the first time, submitted a sworn statement averring that it had not operated, maintained or controlled the building at the relevant time.

Under these circumstances the actions of plaintiffs' counsel were clearly appropriate and necessary for his clients' protection, and indeed, any delay in discontinuing was occasioned by defendant's own less than forthcoming communications to plaintiffs' counsel. Concur—Ellerin, J. P., Wallach, Kupferman and Ross, JJ.