OPINION OF THE COURT
Diane A. Lebedeff, J.
This court previously dismissed the plaintiff’s claims against each defendant and concluded that the claims were frivolous and represented "part of an ominous trend towards litigation brought against public interest groups, known as SLAPP suits (Strategic Lawsuits Against Public Participation)” (Entertainment Partners Group v Davis, NYLJ, June 26, 1991, at 22, col 1).
The fixing of the amount of sanctions and attorney’s fees is now raised by motion because the hearing directed by the judgment was frustrated by the failure of plaintiffs counsel to appear with any regularity. The defendants observed that the legal efforts expended on their behalf were billable at far beyond $10,000 each and now move for an order awarding costs and attorney’s fees against plaintiff in the amount of $10,000 to be awarded to each remaining defendant, payable to the two law firms representing defendants.
To resolve the issues, the court must determine the maximum amount to be awarded under CPLR 8303-a, which is in the nature of a sanction for a frivolous suit. As a part of that determination, the court must decide two previously unaddressed issues, specifically whether the $10,000 specified in *896 CPLR 8303-a applies to the case as a whole or permits a higher total costs in a case, and the treatment to be accorded a successful party when represented on a pro bona basis.
THE LITIGATION BACKGROUND
This case had its seeds in community opposition to the application of plaintiff Entertainment Partners Group, Inc. (EPG), for a special zoning permit to operate a restaurant and nightclub known as the Crane Club in Manhattan. Defendants Gail Davis and Ed Green were leaders of the block association which opposed the application before a Community Board and the Board of Standards and Appeals (BSA). After a special permit was granted, Davis and Green, among others, commenced a CPLR article 78 proceeding in which defendant Lawrence D. Bernfeld, an attorney, represented the neighborhood group.
In that article 78 proceeding, this court remanded certain issues to the BSA. BSA modified the conditions imposed upon the permit by limiting the size of the dance area, which ameliorated some of the community’s concern that the club would be a dance hall, and otherwise adhered to its original determination.
Before the final BSA decision was rendered, EPG commenced this action. On motions to dismiss, the complaint was found to lack legal merit. The first cause of action, which included several different theories, could not withstand dismissal because: (1) the defamation assertions were untimely under CPLR 215, except as to statements in the court proceeding which were covered by absolute privilege (Taker v Poliak, 44 NY2d 211 [1978]); and (2) the prima facie tort and tortious interference with prospective business relationships lacked necessary allegations regarding the defendants’ motives and could not lie given the complaint’s allegation that defendants acted out of self-interest (see, Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314 [1983]; Nifty Foods Corp. v Great Atl. & Pac. Tea Co., 614 F2d 832 [2d Cir 1980] [applying New York law]; Rosenberg v Del-Mar Div., Champion Intl. Corp., 56 AD2d 576 [2d Dept 1977]).
The second cause of action asserted that the block association lacked proper legal status under General Business Law § 133 and General Associations Law § 18, which defendants refuted as a factual matter. This claim was dismissed because those statutes do not create a recognized tort cause of action.
*897 Additionally, two well-recognized public policies were applicable and supported a finding of its lack of colorable merit. Specifically, as to defendant Bernfeld, it was relevant that an attorney, acting in his or her professional role, cannot be found civilly liable for acts performed in good faith and honest purpose of protecting the interest of a client (Hahn v Wylie, 54 AD2d 629 [1st Dept 1976]). As to the entire action, absent an actionable tort, it impermissibly assailed an exercise of the defendants’ constitutional right to petition government for a redress of grievances, which protects from tort claims a citizen who attempts to influence governmental action through an invocation of administrative, legislative or judicial process to achieve political or economic goals (see, Eastern R. R. Conference v Noerr Motors, 365 US 127 [1961]; also, Aknin v Phillips, 404 F Supp 1150, affd 538 F2d 307 [2d Cir 1976] [property owners adjacent to discotheque filed noise complaint]; Anchorage Joint Venture v Anchorage Condominium Assn., 670 P2d 1249 [Colo App 1983] [suit over zoning variance protest]; Havoco of Am. v Hollobow, 702 F2d 643 [7th Cir 1983] [Securities and Exchange Commission complaint]; Gorman Towers v Bogoslavsky, 626 F2d 607 [8th Cir 1980] [housing project opponents]; see also, Miracle Mile Assocs. v City of Rochester, 617 F2d 18 [2d Cir 1980]; and Sutton Area Community v City of New York, NYLJ Nov. 9, 1988, at 21, col 4 [Sup Ct, NY County, Nardelli, J.]). To use the words of Justice Colabella, who awarded sanctions in a similar case in Matter of Gordon v Marrone (151 Miscx 2d 164, 169 [Sup Ct, Westchester County 1991, Colabella, J.]), the courts of New York State do not countenance litigation which is "an effort to chill the * * * exercise of * * * First Amendment rights.”
FRIVOLITY
Finding the case without merit, the court determined sanctions were appropriate, specifically in the form of costs under CPLR 8303-a, which allows the imposition of costs in a personal injury case upon a determination that an action or claim is "frivolous.” CPLR 8303-a (a) provides: "If in an action to recover damages for personal injury * * * an action or claim is commenced * * * or a counterclaim, defense or cross claim is commenced * * * that is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs and reasonable attorney’s fees not exceeding ten thousand dol *898 lars”. A finding of frivolity requires a determination that the action, claim or defense "was commenced, used or continued in bad faith, solely to delay or prolong the resolution of the litigation”, and, when found, requires the imposition of costs and attorney’s fees upon the frivolous litigant, the litigant’s counsel, or both (CPLR 8303-a [c] [i]). Once frivolity is determined, CPLR 8303-a is mandatory where applicable (Grasso v Mathew, 164 AD2d 476, lv dismissed 77 NY2d 940, lv denied 78 NY2d 855 [1991]; Mitchell v Herald Co., 137 AD2d 213, 220 [4th Dept 1988]; see also, Patane v Griffin, 164 AD2d 192 [3d Dept 1990]; and Fritze v Versailles, 158 AD2d 669 [2d Dept 1990]).
CPLR 8303-a is a legislative recognition that the remedy of an "assessment of attorneys’ fees and disbursements has become the single most important device suggested to deter [frivolous litigation]” (Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 4 [1986]). Its purpose and legislative history is fully set forth in Matter of Eagle Ins. Co. (Ruiz) (141 Misc 2d 815 [Sup Ct, Nassau County, Christ, J.]), and need not be repeated here. There are two similar provisions bearing the same number, an oddity described as "the apparent result of the Legislature’s attempt to amend a statute which had previously been amended out of existence (compare, L 1986, ch 220, § 35 [eff June 28, 1986], with L 1986, ch 485, § 11 [eff July 21, 1986])” (Mitchell v Herald Co., supra, 137 AD2d, at 218, n 2), and the personal injury provision which is examined here.
An examination of CPLR 8303-a indicates that it is applicable here. Although CPLR 8303-a is limited to actions for "damages for personal injury, injury to property or wrongful death” (CPLR 8303-a [a]), "personal injury” is to be read broadly in light of the definition given to the term by General Construction Law § 37-a and includes defamation, extortion and abuse of process (Mitchell v Herald Co., 137 AD2d 213, supra, appeal dismissed 72 NY2d 952 [1988]; Gordon v Siben & Siben, 146 Misc 2d 553, 557 [App Term, 2d Dept 1990]). Given that both personal injury and economic injury were alleged, the court finds the tort claims raised here fall within the ambit of CPLR 8303-a. The action here was commenced after the effective date of the statute.
CPLR 8303-a requires "a showing that the plaintiff and counsel knew or should have known that the action lacked merit” (McGill v Parker, 179 AD2d 98, 111 [1st Dept 1992]). The party seeking sanctions under CPLR 8303-a must be held to the burden of demonstrating entitlement to relief as is *899 imposed upon claimants under 22 NYCRR part 130 (see, Matter of Schulz v Washington County, 157 AD2d 948, 949 [3d Dept 1990]). As set forth in Jacobson v Chase Manhattan Bank (174 AD2d 709 [2d Dept 1991]), a reasonable investigation standard is to be applied. The court is satisfied that EPG’s action is frivolous under these standards.
Sanctions under 22 NYCRR part 130 were also considered by the court but were rejected because that rule does "not apply to requests for costs or attorneys’ fees subject to the provisions of CPLR 8303-a” (22 NYCRR 130-1.5). Although the provisions have been termed "somewhat overlapping” (Watson v City of New York, 178 AD2d 126, 128 [1st Dept 1991]), there is a difference in that CPLR 8303-a is to be utilized solely upon an examination of claims and defenses and may not be expanded to other instances, such as discovery abuse (Harley v Druzba, 169 AD2d 1001 [3d Dept 1991]).
It should be noted that, in future years, the particular issues addressed here in relation to a SLAPP suit may stand upon an additional footing. Effective January 1, 1993, a new section 70-a of the Civil Rights Law authorizes claimants fitting within the definitional sections of section 76-a of the Civil Rights Law who are subjected to a SLAPP suit to claim costs, attorney’s fees, other compensatory damages and punitive damages for those (L 1992, ch 767). The legislative findings and purpose, as stated in the law, are:
"The legislature hereby declares it to be the policy of the state that the rights of citizens to participate freely in the public process must be safeguarded with great diligence. The laws of the state must provide the utmost protection for the free exercise of speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.
"The legislature further finds that the threat of personal damages and litigation costs can be and has been used as a means of harassing, intimidating or punishing individuals, unincorporated associations, not-for-profit corporations and others who have involved themselves in public affairs.” (L 1992, ch 767, § 1.)
The law also contains companion amendments which require entities bringing such an action addressing public petition and participation to demonstrate that the claim is not frivolous in the face of a motion to dismiss or for summary judgment (CPLR 3211 [g]; 3212 [h]). Presumably, the State will be *900 entitled to 20% of punitive awards under the new statute applicable to such damages (CPLR 8701, added by L 1992, ch 55, § 393).
On the merits of this application, the court found the action frivolous because it was commenced or continued in bad faith without any reasonable basis in law or fact and the claims could not be supported by a good-faith argument for an extension, modification or reversal of existing law (CPLR 8303-a [c] [ii]).
FIXING ATTORNEY’S FEES
The court is presented with a request that attorneys’ fees be fixed on the basis of the motion papers. Movants present detailed records demonstrating that the fees are many times the possible maximum $10,000 each.
Here, as in Strout Realty v Mechta (175 AD2d 201, 202 [2d Dept 1991]), the attorney for the movant has "stated and documented * * * the sum necessary to reimburse his firm for its legal services and disbursements.” Almost exclusively, the legal efforts involved motion papers presented to this court and time spent in court on the Motion Calendar. This court directly reviewed the papers and observed the attendance of the attorneys. Such judicial observations have been utilized as a basis for setting attorney’s fees under CPLR 8303-a (see, Robinson v Ross, 149 Misc 2d 289 [Just Ct, Scarsdale 1990]).
The court is well satisfied that the magnitude of the legal efforts must be directly attributed to plaintiff, which alleged multiple tort theories requiring defense counsel to perform extensive research and prepare lengthy briefs. It is proper to include consideration of preparation of any application for CPLR 8303-a costs (Patane v Griffin, supra, 164 AD2d, at 198), although that consideration is not operative here since the bulk of the efforts were directed at dismissal of the complaint.
It is significant, as it was in Old Paris v G.E.B.M. Intl. (170 AD2d 392, 393 [1st Dept 1991], citing Kumble v Windsor Plaza Co., 128 AD2d 425, 426 [1st Dept 1987], lv dismissed 70 NY2d 693 [1987]), that "the amount of the fees sought [is] not challenged by the defendants.” No special factors are urged which might indicate that a rate other than the billing rate should be used (see, for example, Matter of Patricia R. v Peter W., 126 Misc 2d 87 [Fam Ct, NY County 1984] [use of indigent defendants panel rates for assigned attorney]; and Parker 72nd Assocs. v Isaacs, 109 Misc 2d 57 [Civ Ct, NY County *901 1980, Lebedeff, J.] [billable rate reduced to reflect elimination of overhead factor incorporated into firm’s billing rate for research by attorney for private purpose]).
In this context, given the completeness of the record and the lack of any request therefore, no hearing is required (compare, need for hearing under 22 NYCRR part 130 sanctions, Gerstein v I Travel, 169 AD2d 492 [1st Dept 1991]). There is no underlying factual dispute which necessitates a hearing, unlike Pearl v 305 E. 92nd St. Corp. (175 AD2d 735 [1st Dept 1991]), in which the sides disagreed as to whether there was a breach of a stipulation of settlement.
Accordingly, the court determines the reasonable value of the legal services to be well over $10,000 on behalf of each of the three moving defendants.
MAXIMUM AMOUNT OF CPLR 8303-A SANCTIONS
The parties dispute whether the CPLR 8303-a (a) maximum of $10,000 in costs applies to the entire action. The section itself provides that, upon finding frivolous "an action or claim * * * or a counterclaim, defense or cross claim * * * the court shall award to the successful party costs and reasonable attorney’s fees not exceeding ten thousand dollars.”
The court concludes that the plain meaning of CPLR 8303-a permits, but does not necessarily require, that the $10,000 maximum apply to each prevailing party. Further, the statutory language also permits consideration of a higher award to a given party for it supports a cost award even upon a "claim”, and a number of claims may be raised against an individual party.
Had the Legislature not intended to allow consideration of costs as to multiple prevailing parties and multiple claims, even if the total were in excess of $10,000, the language would have addressed costs in the entire case, as is done in the text of the costs provisions in real property actions and in difficult or complex cases, which address additional costs only on the entire "action” (CPLR 8302, 8303), and in the sanctions provision of section 130-1.2 of the Rules of the Chief Administrator of the Courts (22 NYCRR), which contains reference to a maximum amount of $10,000 in a single case (see, as to maximum award for 22 NYCRR part 130 sanctions, Matter of Minister of Refrn. Prot. Dutch Church v 198 Broadway, 76 NY2d 411, 414-415 [1990]). The conclusion reached here is consistent with the general rule of construction that every *902 word and part of a statute must be given effect and meaning (Sanders v Winship, 57 NY2d 391, 396 [1982]).
Supporting this construction is the observation that CPLR 8303-a (a) has been applied in relation to constituent parts of a case, indicating a literal interpretation should be given to the phrase "an action or claim * * * or a counterclaim, defense or cross claim.” Such instances include the award of CPLR 8303-a costs in favor of a third-party defendant (Jacobson v Chase Manhattan Bank, 174 AD2d 709 [2d Dept 1991] [award of $9,509 under CPLR 8303-a]), and for a frivolous defense as to liability (Aurnou v Craig, 184 AD2d 1048 [4th Dept 1992]). There appears to be no procedural objection to awarding such costs to only some of the defendants (see, Poley v Rochester Community Sav. Bank, 159 AD2d 944 [4th Dept 1990] [cost awards to some defendants vacated on merits without procedural criticism]). Thus, at a minimum, the application of the statute to date supports consideration of a request for a cost award under CPLR 8303-a in relation to each prevailing party which conclusion is consistent with the general principle that costs may be awarded to different parties on different issues (CPLR 8103).
It does no violence to established concepts that total CPLR 8303-a costs might exceed a benchmark of $10,000 in an entire case, for this conclusion is consistent with the compensatory purpose of costs: "Costs are certain allowances * * * in the nature of incidental damages allowed to indemnify a party against the expense of successfully asserting * * * rights in court.” (Stevens v Central Natl. Bank, 168 NY 560, 566 [1901]; see also, 24 NY Jur 2d, Costs, § 1.) Indeed, many types of relief similar to CPLR 8303-a sanctions incorporate no set monetary limitation, such as legal fees as damages on contempt (317 W. 87 Assocs. v Dannenberg, 170 AD2d 250 [1st Dept 1991] [perjury and forged document]); if the action in question involves a court order (Stein v Farah N.Y., 169 AD2d 378 [1st Dept 1991]); relief for discovery abuse under CPLR 3126 (1), (see, Renford v Lizardo, 104 AD2d 717 [4th Dept 1984]; Nomako v Ashton, 22 AD2d 683 [1st Dept 1964]; Di Bartolo v American & Foreign Ins. Co., 48 Misc 2d 843, affd 26 AD2d 992 [2d Dept 1966]); or a claim for economic injury for a suit maliciously designed to harass and oppress (see, United Pickle Co. v Omanoff, 63 AD2d 892 [1st Dept 1978]). None of these items are viewed as a significant inroad upon the American rule in relation to legal fees, under which each party bears its *903 own litigation costs (see, Alyeska Pipeline Co. v Wilderness Socy., 421 US 240, 247 [1975]).
It is not inconsistent with this conclusion to observe that, when faced with multiple parties, the court has the discretion to determine if CPLR 8303-a costs are to be awarded upon the action as a whole, upon constituent claims, or on a named party basis. Sound reasons buttress application of discretion in this area. First, the statute itself, by the phrase "action or claim * * * counterclaim, defense or cross claim” (CPLR 8303-a [a]), permits a range of choices as framed by the Legislature. Second, limited discretion is consistent with the framework of costs within the CPLR, which allows some flexibility as to costs, including their denial upon an equitable basis (CPLR 8101; see also, 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 8101.16 et seq.), and often approaches two or more parties on the same side as a single party (CPLR 8105). Finally, this limited discretion respects the judicial prerogative of discretion which generally exists in relation to sanctions.
As to resolving the basis upon which CPLR 8303-a costs shall be awarded here, the court observes that plaintiff cast its net deliberately to intimidate selected community leaders. From the court’s observation of the individual defendants, plaintiff appeared to select those with sufficient stability to have something to lose in a legal contest. Plaintiff could have made its point as easily with this relatively unified community group by selecting merely one individual as its target.
The purpose of a suit of this type is inescapable. As quoted in an article in the New York Law Journal (Spencer, Cuomo Signs Bill to Deter SLAPP Lawsuits, NYLJ, Aug. 6, 1992, at 1, col 3), Governor Cuomo stated when approving chapter 767 of the Laws of 1992, the SLAPP suit provisions described above, "The aim of SLAPP suits is simple and brutal: the individual is to regret ever having entered the public arena to tell government what she thinks about something directly affecting her.” (See also, 1992 McKinney’s Session Law News of NY, at A-579 [Aug. 1992].) The court concurs with that view.
Further, courts are increasingly called upon to enforce sanction provisions because courts are needlessly flooded and clogged with claims that advance no legitimate purpose. The Appellate Division, First Department, recently declared that "we think it appropriate at this time to indicate to the Bar that frivolous and baseless actions will not be tolerated and will result in a strict application of the provisions of CPLR *904 8303-a” (Rittenhouse v St. Regis Hotel Joint Venture, 180 AD2d 523, 525), an approach promptly echoed and quoted by the Third Department in Smullens v MacVean (183 AD2d 1105 [3d Dept, May 28, 1992]).
Plaintiffs choice to invoke the judicial process in relation to multiple community opponents does not incline the court to exercise its discretion by declining separate costs awards. Given all of the circumstances, the court determines that CPLR 8303-a costs shall be awarded to each moving party. The defendants have requested a cost award of $10,000 each under CPLR 8303-a, which is granted. Because this decision is the first determination that a frivolous complaint might subject a plaintiff to a cost award of more than $10,000 per party and the caution the court gave to plaintiff and plaintiffs counsel when the original motion to dismiss was argued, the court shall not proceed to consider whether it would be appropriate to award more than defendants requested in their papers.
PRO BONO AND PRO SE COUNSEL
Of the three defendants in this action, it appears the two community members received pro bona representation, with one community member receiving some financial assistance from an insurer, and the community group’s attorney was represented by his firm. Each firm documented services normally billable in excess of $30,000 and requested an award of legal fees of $10,000 per client. The court must consider whether pro bona legal services should properly be an ingredient of a CPLR 8303-a costs award.
As to the defendant attorney, given that the individual attorney was sued, the court will assume that he was represented by his law firm on a pro bona basis. If that representation were considered to be pro se, sanctions are awardable to a pro se firm in a fee dispute case (see, under 22 NYCRR part 130, Bronstein, Van Veen & Bronstein v Taylor, 161 AD2d 328 [1st Dept 1990] [noting the provision allows sanctions to be awarded to a party or an attorney]).
Although a claim for attorney’s fees for services provided upon a pro bona basis has not been previously pressed under the New York State sanctions provision, the court can find no reason to deny entitlement to attorney’s fees under CPLR 8303-a to a firm acting upon pro bona. The most cogent reasons for this view were expressed almost two decades ago *905 by Judge Bentley Kassal, then sitting in the Civil Court, in Atamanuk v Kwok Yuin Wong (82 Misc 2d 1059 [Civ Ct, NY County 1975]). Determining that attorney’s fees should be awarded to a legal services group representing a tenant who prevailed on a claim under section Y51-11.0 (d) (2) of the Administrative Code of the City of New York which mandated that attorney’s fees be awarded, Judge Kassal observed that a windfall benefit would ensue from relieving an offending party of the obligation for legal fees, which would undercut the deterrent function of the mandatory provision. Analogizing to actions of the prevailing attorney to those of a private Attorney General, he concluded that the right to fees hinged solely upon the attorney-client relationship, and the Legislature had not intended that the " 'vindication of statutorily guaranteed rights would depend on the rare likelihood of economic resources in the private party * * * or the availability of legal assistance from charity’ ” (82 Misc 2d, at 1061, quoting from Miller v Amusement Enters., 426 F2d 534, 539 [5th Cir 1970]).
Additionally, it has been observed that a utilization of this approach is "an incentive to lawyers and organizations to accept and pursue actions and proceedings otherwise avoided by private practitioners” (Nassau Trust Co. v Belfield, 89 Misc 2d 282, 284 [Civ Ct, Kings County 1977, Goldstein, J.]). Absent a tie of blood or affection, it is a rare attorney who will offer free or low-cost assistance to defend an individual from a specious claim, especially given the rising cost of legal services, the view that pro bona work lowers income, and the increasing depersonalization of the practice of law (see generally, Adams, The Legal Profession: A Critical Evaluation, 74 Judicature 77 [1990]). If the individual is poor, chances for legal assistance are even less, for it is widely reported that "only fifteen to twenty percent of the civil legal service needs of the poor are met” (Watkins, In Support of a Mandatory Pro Bono Rule for New York State, 57 Brook L Rev 177 [1991]).
It should be stressed that, in relation to a frivolous suit, a request for counsel fees is not a separate cause of action (Yankee Trails v Jardine Ins. Brokers, 145 Misc 2d 282 [Sup Ct, Rensselaer County 1989]). Accordingly, there is no ordinary contingency agreement, but rather, as here, an agreement between lawyer and client that any fees awarded shall be paid to the attorney. On this topic, it is significant that pro bona attorneys may ethically advance and recoup costs. In Baker v American Broadcasting Co. (585 F Supp 291 [ED NY 1984]), Chief Judge Weinstein carefully explored the applica *906 ble rules, including Code of Professional Responsibility DR 5-103 (B) (22 NYCRR 1200.22 [b]), 1943 Formal Opns ABA No. 259, and 1976 Informal Opns ABA No. 1361, as well as the review of The Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York, after studying the "E.D.N.Y. Pro Se Plan” in its Inquiry Reference Nos. 82-25, 82-73 (1984) (see also, as to description of bankruptcy pro bona panel, In re Schwartz & Meyers, 64 Bankr 948 [SD NY 1986]).
Beyond the New York authorities cited above, the only other New York discussion of legal fee awards exists in relation to the statutorily created reciprocal right granted to tenants to recover attorney’s fees where the lease provides a landlord with a right to such fees (see, as to pro se attorney fees granted, Parker 72nd Assocs. v Isaacs, 109 Misc 2d 57, supra; and McMahon v Schwartz, 109 Misc 2d 80 [Civ Ct, Bronx County 1981, Lehner, J.]; and, denying such fees, Chetrick v Briarwood Ct. No. 1, NYLJ, Mar. 23, 1970, at 15, col 7 [Civ Ct, Queens County, La Fauci, J.]; fees granted to pro bona attorney, Scotia Assocs. v Bond, 126 Misc 2d 885 [Civ Ct, NY County 1985, Lehner, J.]; fees granted to pro se attorney in housing administrative matter, Matter of Chessin v New York City Conciliation & Appeals Bd., 116 Misc 2d 1003 [Sup Ct, NY County 1982]). The weight of authority in that area is to permit an award of fees in roughly the same manner as they would be awarded to a paid attorney.
Turning to Federal court treatment of pro bona and pro se counsel, some authorities are assembled in an unpublished opinion of the Sixth Circuit, Court of Appeals, Eason v Eastman & Smith (914 F2d 256 [1990]), and in Cornelia v Schweiker (728 F2d 978, 986 [8th Cir 1984]). Federal precedent exists for an award of Federal Rules of Civil Procedure rule 11 sanctions to an attorney not paid by a party, as in Chu by Chu v Griffith (771 F2d 79, 81 [4th Cir 1985]), to an Attorney General representing a Judge, and In re Usoskin (61 Bankr 869 [ED NY 1986]), to pro bona attorneys for a debtor in a bankruptcy proceeding, as well as to allow pro bona attorneys to recover attorney fees under the discovery sanctions provision of Federal Rules of Civil Procedure rule 37 (National Lawyers Guild v Attorney Gen., 94 FRD 616, 618 [SD NY 1982, Sinclair, Jr., Magis.] [collecting analogous cases]). Pro bona counsel and legal services organizations are permitted compensation even under fee shifting attorney’s fee provisions (see, under 42 USC § 1988, Martin v Heckler, 773 F2d 1145, *907 1152 [11th Cir 1985]; and Oldham v Ehrlich, 617 F2d 163, 168 [8th Cir 1980]; see, under Equal Access to Justice Act, Cornelia v Schweiker, 728 F2d 978, 986-987 [8th Cir 1984], supra; and Ceglia v Schweiker, 566 F Supp 118, 123 [ED NY 1983]; see, as to 42 USC § 2000e-5 [k], New York Gaslight Club v Carey, 447 US 54, 70, n 9 [1980]; see, under Freedom of Information Act, Crooker v U.S. Dept, of Treasury, 634 F2d 48, 49, n 1 [2d Cir 1980]; and see, under Age Discrimination in Employment Act of 1967, Rodriguez v Taylor, 569 F2d 1231, 1244-1246 [3d Cir 1977], cert denied 436 US 913 [1978]).
In conclusion, in relation to CPLR 8303-a, no cogent reason is found to justify an utter disregard for the value of the legal service rendered to a person subjected to a frivolous suit, which is a service not only to the meritorious client but also contributes to the proper functioning of the judicial process. Certainly, the volunteer attorney is held to the same standards as other counsel, at least in terms of the need to abide by professional standards (Matter of Fleet v Pulsar Constr. Corp., 143 AD2d 187 [2d Dept 1988]). Because of that duty, it may well be that even a pro bona attorney might be subjected to a claim for financial sanctions, as have already been raised under rule 11, and denied as to a pro bona counsel who displayed only a "slight excess of zeal in representing his pro bona client” (see, Johnson v Orr, 1985 WL 250, 2 [SD NY 1985]).
Accordingly, costs and attorney fees shall be awarded under CPLR 8303-a notwithstanding the pro bona nature of the representation.
DISCONTINUANCE
In closing, one facet of this litigation should be highlighted. Upon submission of the motion to dismiss, plaintiff was asked to discontinue these claims but refused to do so unless the sanctions requests were withdrawn. One defendant, a senior citizen, agreed to a discontinuance under that condition.
Plaintiff at that point had already received the briefs which demonstrated the utter frivolity of the claims. Plaintiff would have been better served to have discontinued even if the sanctions request were to survive. Although a costs and attorney’s fees award under CPLR 8303-a is generally mandatory upon a finding of frivolity, where there is a discontinuance, even if an issue such as one regarding costs is submitted, the statute allows slightly more discretion by permitting a court *908 to "find that the party or the attorney did not act in bad faith” (CPLR 8303-a [c] [ii]).
An offer to discontinue does not terminate the inquiry, for it must be reviewed to determine whether it has been made promptly and, if so, there may a good basis for denying sanctions (see, for example, CPLR 8303-a sanctions denied in relation to discontinuance after jury selection, Narins v De-Brovner, 141 AD2d 381 [1st Dept 1988]). Costs may be imposed if a court determines the offer is simply too little too late, as in Patane v Griffin (supra, 164 AD2d, at 197), which affirmed a trial court’s determination that the action was " 'only * * * a means to quiet public criticism’.”
Several factors, if present, should alert counsel to the sanctionable nature of a claim. Claims which rest upon "patently false factual allegations” or which a claimant learns it could not prove should be scrutinized (Patane v Griffin, supra, 164 AD2d, at 196). Repeated litigation with another party, a factor present here should be carefully examined for merit because sanctions have been frequently imposed in such situations (see, failure to discontinue first claim which counsel should have concluded lacked merit based upon discovery material, Smullens v MacVean, 183 AD2d 1105 [3d Dept, May 28, 1992], supra; see, under 22 NYCRR part 130, fourth suit on the same issue, Santangelo v Goldman Sachs & Co., 169 AD2d 692 [1st Dept 1991]; see, other similar litigation pending, remitted for sanctions hearing, Giblin v Anesthesiology Assocs., 171 AD2d 839 [2d Dept 1991]; compare, second application to stay arbitration, sanctions vacated in Nolan & Co. v Daly, 170 AD2d 320 [1st Dept 1991], but upheld on first application to stay arbitration in Feffer v Goodkind, Wechsler, Labaton & Rudoff, 183 AD2d 678 [1st Dept 1992]; ill-founded res judicata claim sanctionable, Creative Bath Prods, v Connecticut Gen. Life Ins. Co., 173 AD2d 400 [1st Dept 1991]). Allegations involving "conspiracies” or other indicia of "irrationality” should inspire review (Rittenhouse v St. Regis Hotel Joint Venture, 149 Misc 2d 452, 456, revd 180 AD2d 523 [1st Dept 1992], supra).
Finally, it cannot be ignored that a plaintiff’s attorney, particularly in a possible SLAPP suit context, should give considerable ethical thought to the issues involved and the impact of the contemplated suit. Among the disciplinary rules, Code of Professional Responsibility DR 7-102 (A) (1) (22 NYCRR 1200.33 [a] [1]) prohibits a lawyer from taking action "merely to harass or maliciously injure another”; DR 2-109 (A) (1) (22 NYCRR 1200.14 [a] [1]) requires a lawyer to decline *909 employment for the same end, and EC 7-10 speaks of the obligation of counsel to "avoid the infliction of needless harm.” The court endorses the conclusion reached by at least one recognized expert that an attorney should reflect deeply before involvement in what might be a SLAPP suit (see, Rubin, Are SLAPP Suits Unethical, 12 NYS Bar Envtl Law Section J 29 [1992]).
In the court’s view, in this instance, plaintiff would have improved its position by discontinuing its claims.
CONCLUSION
Taking all of the foregoing authorities into consideration, this court is satisfied that that $10,000 is the appropriate sanction, inclusive of fees, and $10,000 in costs and attorney’s fees are awarded to each movant as against plaintiff and plaintiff’s counsel. This award shall be payable to the law firms (Rittenhouse v St. Regis Hotel Joint Venture, 180 AD2d, at 525, supra). The clerk shall enter such costs upon presentation of an original or supplemental bill of costs, as may be appropriate and in accord with the procedures applicable to the entry of a judgment for costs.